# EXHIBIT A
# TO NOTICE OF REMOVAL

| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER 20-881-I |
|---|---|---|

| PLAINTIFF Metropolitan Nashville Airport Authority | DEFENDANT Colonial Pipeline Company |
|---|---|

**TO:** (NAME AND ADDRESS OF DEFENDANT)

**Colonial Pipeline Company**
c/o Corporation Service Company, Registered Agent
2908 Poston Ave
Nashville, TN 37203-1312 USA

List each defendant on a separate summons.

Method of Service:

☑ Certified Mail
☐ Davidson Co. Sheriff
☐ *Comm. Of Insurance
☐ *Secretary of State
☐ *Out of County Sheriff
☐ Private Process Server
☐ Other
　　　　*Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number) Paul S. Davidson Michael C. Brett Waller Lansden Dortch & Davis, LLP 511 Union Street, Suite 2700 Nashville, TN 37219 (615) 244-6380 | FILED, ISSUED & ATTESTED 09/04/2020 MARIA M. SALAS, Clerk and Master By:　　　　　1 Public Square Suite 308 Nashville, TN 37201 /s/ Bettie Ross Deputy Clerk & Master |
|---|---|

**NOTICE OF DISPOSITION DATE**

　　The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

　　If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | **Sheriff** |

***Submit one original plus one copy for each defendant to be served.**

♿ADA Coordinator, Maria M. Salas (862-5710)

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _Colonial Pipeline Co._

☑ Served _Corporation Service Co. (Registered Agent)_     ☐ Not Found _____

☐ Not Served _____     ☐ Other _____

| DATE OF RETURN: _9/9/20_ | By: _Keith S. Brewer_ |
| | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____. On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this _____ day of _____, 20___. | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
| Signature of ____ Notary Public or ____ Deputy Clerk | |
| My Commission Expires: | |

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

    Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

    Mail list to: Clerk & Master
               1 Public Square
               Suite 308
               Nashville TN 37201

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | MARIA M. SALAS, Clerk & Master<br><br>By: _/s/ Bettie Ross_<br><br>                              D.C. & M. |

IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
20TH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| METROPOLITAN NASHVILLE AIRPORT AUTHORITY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| COLONIAL PIPELINE COMPANY, | ) ) | |
| Defendant. | ) ) ) ) ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

This is an action by Plaintiff Metropolitan Nashville Airport Authority (the "Airport" or "Plaintiff") for declaratory judgment, breach of contract, and specific enforcement of an easement agreement (the "Easement") that requires Defendant Colonial Pipeline Company ("Colonial" or "Defendant") to relocate its liquid petroleum products pipeline to make way for the Airport's continuing renovation and expansion program, "BNA Vision". Traffic congestion at the Airport is already noticeable at peak times. Without improvements that require relocation of the pipeline, the result will be significant back-ups by 2023 and gridlock by 2028. In order to meet construction schedules and avoid undue delay, the Airport has informed Colonial that the pipeline must be moved by mid-2021. Although Colonial acknowledged its obligation in 2018, it has refused to honor its agreement to move the pipeline on schedule and is engaged in a hold up of the relocation in an attempt to extract unwarranted concessions from both the Tennessee Department of Transportation ("TDOT") and the Airport. Colonial's breach of the Easement threatens material, immediate and irreparable project delays. By this action, the Airport, for itself and in the public interest, seeks a speedy award of specific performance mandating Colonial to

1

move the pipeline on a definitive schedule and for other and further relief as this Court deems just, proper and equitable.

<u>PARTIES, JURISDICTION, AND VENUE</u>

1. The Airport is a Tennessee governmental entity with its principal place of business at One Terminal Drive Suite 501, Nashville, TN 37214. With nearly 18.3 million passengers in 2019, the Airport has been one of the fastest growing airports in North America.

2. Colonial is a privately held Delaware and Virginia corporation authorized to conduct business in Tennessee, with its principal place of business at 1185 Sanctuary Parkway, Suite 100, Alpharetta, Georgia 30009. Colonial is an energy company that claims to manage the largest refined products pipeline in the United States. Pursuant to the Easement, Colonial transports liquid petroleum products through two pipelines that cross Airport property in Davidson County.

3. This Court has personal jurisdiction over Colonial pursuant to Tenn. Code Ann. §§ 20-2-201, -214, and -223. Colonial conducts business in the state of Tennessee and this action relates to and arises out of the Easement.

4. This Court has subject matter jurisdiction over this action pursuant to Tenn. Code Ann. §§ 16-11-101, -102, -103, and -115, as well as T.C.A.§§ 29-14-102, -103, and -104.

5. Venue is proper in this Court under Tenn. Code Ann. § 16-11-114(1) and (3). This cause of action seeks a declaration of the rights and obligations of the parties under the Easement and seeks to specifically enforce the performance of that agreement in Davidson County, Tennessee. Venue is also proper in this Court under Tenn. Code Ann. § 20-4-104, in that Davidson County, Tennessee is the county where all or a substantial part of the events or omissions giving rise to this cause of action accrued.

2

6.      The Airport and Colonial entered into the Easement on May 14, 1976.   A true and correct copy of the Easement is attached as **Exhibit 1**.

7.      The Easement grants Colonial the right to "construct, operate, maintain, repair, replace and inspect its liquid petroleum products pipeline" on real property in Davidson County, Tennessee, owned by the Airport.  *See* Exhibit 1 at Page 3.

8.      The Easement also provides that "Colonial will relocate its easements, either those existing on property now owned or hereafter acquired by the Metropolitan Nashville Airport Authority, at its sole cost and expense upon notification by the Metropolitan Nashville Airport Authority that its lines interfere with the expansion, development, and/or construction undertaken or to be undertaken by the Metropolitan Nashville Airport Authority, its successors, assigns, agents, or employees." *See* Exhibit 1 at Page 6.

9.      Middle Tennessee has seen an explosion of economic and population growth in recent years. Since at least 2003, the Airport has planned an expansion of its facilities to accommodate the increase in air traffic and passengers traveling through the region. Such an expansion necessarily requires realignment of portions of Donelson Pike and improvements to terminal access roadways in order to address traffic congestion and open up space for the Airport's facilities and roadways (the "Terminal Access Roadway Improvement Project" or "TARI Project").

10.     In furtherance of its expansion plans, the Airport requested that the Tennessee Department of Transportation ("TDOT") agree to realign Donelson Pike (the "Highway Project").  TDOT agreed to undertake the Highway Project, which was designed to tie into the Airport's planned terminal access roadway system, as an accommodation to the Airport.  TDOT

and the Airport agreed that both the Highway Project and the TARI Project would proceed concurrently and they agreed to work together to develop a mutually beneficial phasing plan that maintains adequate access to airport facilities at all times. A true and correct copy of the Memorandum of Understanding entered into between the Airport and TDOT on November 16, 2018 is attached hereto as **Exhibit 2**.

11.     The Airport and TDOT identified that the Highway Project and the TARI Project conflicted with the existing location of the liquid petroleum products pipelines operated by Colonial pursuant to the Easement. In 2018, the Airport notified Colonial that its pipelines interfered with the TARI Project and would have to be moved. Throughout 2018 and 2019 Colonial and the Airport met to address engineering issues related to relocation of Colonial's pipeline to accommodate the Airport's expansion plans.

12.     On July 5, 2018, Colonial's Chief Relocation Engineer, Dan Jacobsen, met with Airport project managers to discuss engineering issues tied to the relocation. Mr. Jacobsen indicated that Colonial preferred one relocation option that would resolve all conflicts with the TARI Project and the Highway Project. He acknowledged Colonial's obligation to pay for the relocation, stating Colonial's Easement with the Airport was "not advantageous" for Colonial, because it legally obligated Colonial to move the pipelines at Colonial's own expense.

13.     On September 7, 2018, Airport project managers met again with Mr. Jacobsen and other members of the Colonial pipeline engineering staff to discuss three (3) proposed relocation alignments. Mr. Jacobsen represented that Colonial preferred Option 1A, which would relocate Colonial's lines to a new alignment parallel to I-40. A true and correct copy of Colonial's preferred Option 1A is attached as **Exhibit 3.**

Case 3:20-cv-00809   Document 1-1   Filed 09/18/20   Page 7 of 68 PageID #: 11

14.     By November 2018, Colonial was on notice that TDOT would only reimburse Colonial for engineering and construction costs associated with those portions of the Option 1A relocation plan that fell directly within TDOT's right of way.  Because Colonial knew that the entire pipeline relocation was not fully reimbursable by TDOT, Mr. Jacobsen informed the Airport that Colonial's budget for the relocation would be subject to review and approval of Colonial's management. He estimated that the approval process and the engineering and construction associated with the relocation would require up to 18 months.

15.     In February 2019, Colonial and the Airport discussed the timeline for the relocation. Colonial was informed that the pipeline relocation should be completed by the end of 2020 so that the TARI project could remain on schedule.

16.     On May 24, 2019, Airport project managers met again with Mr. Jacobsen, as well as Colonial District Manager Perry Sisk and Colonial Project Manager Igor Rodrigues, along with two employees of Colonial's design consultant Kleinfelder, Inc. ("Kleinfelder"). The group discussed relocation plans and mitigation of conflicts.  Colonial confirmed that relocating the pipeline using Option 1A, the area along the south side of I-40, was Colonial's most favorable solution.  The timeline for relocating the pipeline was again discussed.  Colonial represented that its intention was to have all the relocation/removal work done by mid-2021.

17.     On August 19, 2019, Mr. Jacobsen sent an email to Airport personnel indicating that: "On August 8th, I presented this relocation project to upper management and received approval to move into the next stage of engineering."  He asked that the Airport confirm that it was in agreement with the Option 1A routing of the relocation.  The Airport responded that it was in agreement with Option 1A. Between August and November 2019, Colonial project managers and the Airport worked together to move the relocation project forward.  A true and

correct copy of the September 19, 2019 email from Jim Morinec summarizing the technical aspects of the relocation agreed upon by the Airport, Colonial, and Kleinfelder is attached hereto as **Exhibit 4.**

18.      On December 13, 2019, however, Mr. Jacobsen and representatives of Colonial's Commercial Affairs and Legal Departments met with TDOT and took the position  that the Airport's TARI project was a "direction action" resulting from TDOT's Highway Project, and insisted that TDOT was responsible to pay 100% of the pipeline relocation costs (which Colonial estimated to be approximately $30 Million). Colonial also represented that its Board had not approved the pipeline relocation; and that Board approval, if ultimately granted, was expected to take 6-12 months. TDOT denied the pipeline relocation was 100% reimbursable, and again made it clear that the Highway Project was being done as an accommodation to the TARI Project, not part of a TDOT initiative to maintain roadway functionality.

19.      Following the December 13, 2019 meeting between Colonial and TDOT, Colonial submitted its plans for relocation (the "A-Date Package"), demanding that TDOT pay 100% of the costs to relocate the pipeline. On January 23, 2020, TDOT rejected Colonial's A-Date Package and asked Colonial to resubmit a revised plan that reflected only the engineering and construction costs for the mitigation of those portions of the Highway Project that fell directly within TDOT's right of way. A true and correct copy of TDOT's January 23, 2020 rejection of Colonial's A-Date Package is attached as **Exhibit 5.**

20.      After Colonial's attempt to shift 100% of its contractual obligation to pay for the pipeline relocation to TDOT was rejected by TDOT, Colonial postponed or cancelled its land surveying and engineering investigations and related meetings with the Airport.  Although Mr. Jacobsen had indicated in December 2019 that he had planned to hold meetings with the Airport

in the following three to eight (3-8) weeks on right of way, easement, environmental, permitting, and design considerations, he subsequently informed the Airport that he was required to obtain authorization from Colonial's Legal Department to even schedule such meetings. The meetings were never scheduled. Mr. Jacobsen's employment with Colonial was terminated in March 2020.

21.     Also in March 2020, in its continuing effort to get the relocation project on track, the Airport sent formal written notice to Colonial (the "Notice") that because the current location of Colonial's easements interfered with the Airport's plans for expansion and related construction, Colonial was obligated to relocate its easements at its sole cost and expense. The Airport reminded Colonial that time was of the essence. A true and correct copy of the Notice is attached as **Exhibit 6**.

22.     On April 8, 2019, Colonial's Assistant General Counsel sent a letter in response to the Airport's Notice (the "Response") which failed to substantively respond to the Airport's request that Colonial relocate its pipeline. A true and correct copy of the Response is attached as **Exhibit 7**. Specifically, the Response states:

> *The relocation of Colonial's pipelines is a complex, multi-million dollar project that takes a great deal of coordination and planning, particularly when (as is the case here) the relocation is done at the request of a third-party and not because of Colonial's own operational needs . . . It is not cost effective or desirable for Colonial to do separate pipeline relocation projects to address the TDOT and MNAA projects. Accordingly, Colonial has been in discussions with TDOT and MNAA for some time about Colonial's proposed plan to do a single project, relocating both pipelines in a manner that would address all conflicts with the TDOT project and the MNAA project. In fact, representatives from MNAA and Colonial have had several meetings since 2018 (both in Alpharetta and Nashville) to discuss various technical aspects of the relocation, including the proposed route of the relocation. Colonial trusts that MNAA will continue to work with TDOT and us on that effort.*

23.     Colonial did not submit a revised A-Date Package to TDOT until May 21, 2020. While the revised A-Date Package no longer insisted that TDOT pay 100% of the engineering

and construction costs, it did claim that TDOT was responsible to pay in excess of $12 Million of those costs because Colonial was forced to choose a more expensive relocation route in order to avoid soil remediation costs resulting from a pipeline spill that occurred on the Airport's property in April 2019. This is not true, as the route Colonial includes in its revised A-Date package is essentially the same as the Option 1A route it chose before the spill took place.

24.     TDOT again rejected Colonial's proposal, this time on the grounds that Colonial was requesting that TDOT pay for "betterment." That is, Colonial was asking TDOT to pay for upgrades to the design of the pipeline intended to improve the long term maintenance and longevity of the pipeline. Colonial was again instructed to re-submit a revised A-Date Package that represents only the engineering and construction costs for those parts of the relocation that fell directly within TDOT's right of way. To date, Colonial has failed to do so. A true and correct copy of TDOT's July 16, 2020, rejection of Colonial's revised A-Date Package is attached as **Exhibit 8.**

25.     On June 29, 2020, the Airport requested that Colonial provide: "A clear and concise statement of Colonial's position regarding movement of the pipeline, including a current statement of its plans, anticipated timing and expense and identification of issues or impediments it believes need to be resolved." Colonial has failed to respond to this request.

26.     The Airport subsequently arranged an August 13, 2020 meeting of business, operational, and legal representatives of the Airport, TDOT, and Colonial to identify and discuss any outstanding issues relating to the pipeline relocation. The day before the meeting was to begin, and with prior knowledge of TDOT's participation, Colonial informed the Airport that it refused to attend the meeting if both TDOT and the Airport were present. The Airport asked Colonial to reconsider. Colonial responded to this request by saying it would be willing to

attend, but that it disagreed with the Airport's proposed agenda and would not discuss issues it deemed unique to the Airport or TDOT in the presence of the other. Colonial has not identified any issues related to the pipeline relocation that are so unique to the Airport that they may not be discussed in TDOT's presence. A true and correct copy of the email chain setting forth the proposed attendees and agenda for the meeting is attached as **Exhibit 9.**

27. After months of prevarications and delays, Colonial has failed to comply with its obligation under the Easement to relocate the pipeline at its own expense. If Colonial is not ordered by this Court to move the pipeline on a definitive schedule, the Airport's planned expansion will be significantly disrupted and delayed.

<u>CAUSES OF ACTION</u>

**COUNT ONE: DECLARATORY JUDGMENT**

28. The Airport incorporates the foregoing numbered paragraphs above as if fully set forth herein.

29. The Easement states in relevant part that "Colonial will relocate its easements, either those existing on property now owned or hereafter acquired by the Metropolitan Nashville Airport Authority, at its sole cost and expense upon notification by the Metropolitan Nashville Airport Authority that its lines interfere with the expansion, development, and/or construction undertaken or to be undertaken by the Metropolitan Nashville Airport Authority, its successors, assigns, agents, or employees."

30. Colonial's pipeline easement interferes with the expansion, development, and/or construction currently being undertaken by the Airport, its successors, assigns, agents, or employees. The Airport provided notification of the need to relocate the pipeline to Colonial in 2018. Nevertheless, Colonial has failed to relocate the pipeline in accordance with the Easement.

31.     Pursuant to Tenn. Code Ann. §§ 29-14-102, -103, and -104, the Airport seeks the declaratory judgment of this Court that it is Colonial's obligation to relocate the Pipeline at its sole cost and expense pursuant to the express contractual terms of the Easement and that any dispute it may have with TDOT regarding the sharing of costs for those portions of the relocation project that may fall within TDOT's right of way are not grounds for Colonial's delay and breach of its agreement with the Airport.

## COUNT TWO: BREACH OF CONTRACT

32.     The Airport incorporates the foregoing numbered paragraphs above as if fully set forth herein.

33.     An enforceable contract exists between the Airport and Colonial. The Easement states in relevant part that "Colonial will relocate its easements, either those existing on property now owned or hereafter acquired by the Metropolitan Nashville Airport Authority, at its sole cost and expense upon notification by the Metropolitan Nashville Airport Authority that its lines interfere with the expansion, development, and/or construction undertaken or to be undertaken by the Metropolitan Nashville Airport Authority, its successors, assigns, agents, or employees."

34.     Colonial's nonperformance under the Easement amounts to breach of contract. Colonial's pipeline easement interferes with the expansion, development, and/or construction currently being undertaken by the Airport, its successors, assigns, agents, or employees.  The Airport provided notification to Colonial in 2018 and again in March 2020 of the need to relocate the pipeline. Nevertheless, Colonial has failed to take the steps necessary to relocate the pipeline in accordance with the Easement.

35.     The Airport has suffered and continues to suffer damages as a result of Colonial's breach of contract. Colonial's failure to relocate the pipeline in accordance with its obligation

under the Easement has caused significant delays to the BNA Vision renovation and expansion program which will only grow worse over time.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, premises considered, Plaintiff Metropolitan Nashville Airport Authority respectfully requests that the Court:

a) grant a speedy hearing of this action and advance it on the calendar as provided by Tenn. R. Civ. P. 57;

b) enter a judgment declaring that Colonial is responsible for (1) relocating its liquid petroleum products pipeline and (2) the costs and expenses associated with relocating Colonial's easement for a liquid petroleum products pipeline on real property owned by the Airport in Davidson County, Tennessee;

c) enter a judgment setting a definitive schedule for Colonial to relocate the pipeline so as to avoid additional project delays and requiring Colonial to adhere to that schedule;

d) award the Airport its attorneys' fees, costs, and expenses incurred; and

e) grant such other and further relief as this Court deems just, proper and equitable.

Respectfully submitted,

s/Paul S. Davidson
Paul S. Davidson (BPR#011789)
Michael C. Brett (BPR#037290)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile (615) 244-6804
Paul.Davidson@wallerlaw.com
Mike.Brett@wallerlaw.com

*Counsel for Plaintiff Metropolitan Nashville Airport Authority*

11

# EXHIBIT 1

## Dedication of Easement and Agreement

For and in consideration of the payment of thirty-five thousand dollars ($35,000.00) cash in hand paid and the mutual benefits that will accrue by reason of the hereinafter described improvements and for the additional consideration hereinafter set out, the undersigned do hereby grant, bargain, sell, transfer and convey unto Colonial Pipeline Company (Colonial) its successors and assigns, a permanent easement described as follows:

All those certain strips of land situated in the 3rd, formerly the 2nd Civil District, Davidson County, Tennessee; said strips being 50 feet in width and lying 25 feet either side of the following described centerlines:

Beginning at a point, said point being N 32° 40' W, 33 feet more or less, from the northerly Right-Of-Way line of Murray Lane; said point of beginning being 10 feet more or less, easterly as measured at right angles, from Colonial Pipeline Company's existing line;

Thence through the lands of the Grantors along a line 10 feet more or less, easterly from and parallel to said pipeline for the following seven courses and distances: N 32° 40' W, 2072 feet; N 69° 51' W, 563 feet; N 87° 47' W, 48 feet; S 76° 59' W, 604 feet; N 85° 30' W, 246 feet; S 82° 48' W, 152 feet; N 89° 22' W, 122 feet;

Thence crossing Colonial Pipeline Company's existing pipeline S 65° 54' W, 69 feet to a point; said point being 20 feet more or less, southerly, as measured at right angles, from Colonial Pipeline Company's existing pipeline;

Thence continuing through the lands of the grantors along a line 20 feet more or less, southerly from and parallel to said pipeline the following 2 courses and distances: S 87° 36' W, 21 feet; S 89° 03' W, 55 feet more or less, to a point of exit, said point of exit being in the easterly Right-Of-Way line of Donelson Pike, 20 feet more or less, southerly as measured along said Right-Of-Way line of Donelson Pike from Colonial Pipeline Company's existing pipeline;

Thence continuing across said Donelson Pike, S 89° 03' W, 89 feet more or less, to a point of re-entry to grantor's land, said point of re-entry being in the westerly Right-Of-Way line of Donelson Pike, 56 feet more or less, southerly, as measured along said Right-Of-Way line of Donelson Pike from a fence corner of grantor's land;

Thenc through the lands of said _rantors, along a line 20 feet more or less, southerly from and parallel to said Colonial Pipeline Company's existing pipeline for the following 24 courses and distances: S 89° 03' W, 37 feet more or less; N 84° 10' W, 282 feet; S 84° 02' W, 306 feet; S 60° 05' W 236 feet; S 70° 52' W, 125 feet; N 88° 38' W, 236 feet; N 78° 54' W, 177 feet; N 64° 03' W, 102 feet; N 04° 42' E, 558 feet; N 37° 29' W, 139 feet; N 07° 42' E, 586 feet; N 69° 55' W, 891 feet; N 85° 03' W, 1035 feet; N 79° 42' W, 235 feet; N 89° 28' W, 69 feet; S 55° 17' W, 89 feet, N 81° 55' W, 331 feet; N 79° 09' W, 162 feet; N 72° 40' W, 318 feet; N 79° 19' W, 361 feet; N 86° 58' W, 118 feet; N 79° 42' W, 335 feet; S 76° 01' W, 48 feet; S 06° 49' W, 337 feet;

Thence continuing along a line 5 feet more or less, southerly from and parallel to said pipeline S 57° 15' W, 68 feet more or less, to a point of exit. Said point being in the easterly Right-Of-Way line of McGavock Pike, said point of exit being 6 feet, more or less, southerly, as measured along said Right-Of-Way line of McGavock Pike from Colonial Pipeline Company's existing pipeline;

Thence continuing across said McGavock Pike, S 57° 15' W, 87 feet, more or less, to a point of re-entry to grantors land said point of re-entry being on the westerly Right-Of-Way line of McGavock Pike, said point of entry being 11 feet, more or less, southerly as measured along said Right-Of-Way line of McGavock Pike from fence corner, being the intersection of the southerly Right-Of-Way line of Dabbs Avenue with the westerly Right-Of-Way line of McGavock Pike;

Thence continuing along said line 5 feet, more or less, southerly from and parallel to said existing pipeline, S 57° 15' W, 71 feet, more or less, to a point, said point being 20 feet, more or less, southerly as measured at right angles from Colonial Pipeline Company's existing pipeline;

Thence continuing through the lands of the Grantor, along a line 20 feet, more or less, southerly from and parallel to said existing pipeline for the following seven courses and distances; N 84° 39' W, 486 feet; N 82° 57' W, 582 feet; S 74° 14' W, 700 feet; S 74° 28' W, 647 feet; S 73° 05' W, 168 feet; S 75° 15' W, 543 feet; N 59° 59' W, 71 feet, more or less, to a point of exit, said point of exit being in the southerly Right-Of-Way line of Dabbs Avenue, 28 feet more or less, westerly, as measured along said Right-Of-Way line of Dabbs Avenue from Colonial Pipeline Company's existing pipeline;

Thence continuing across said Dabbs Avenue, N 59° 59' W, 100 feet, more or less, to a point of re-entry to Grantors land, said point of re-entry being on the northerly Right-Of-Way line of Dabbs Avenue, said point of entry being 28 feet more or less, westerly, as measured along said Right-Of-Way line of Dabbs Avenue from Colonial Pipeline Company's existing pipeline;

Thence continuing along a line 20 feet, more or less, southerly from and parallel to said pipeline the following two courses and distances: N 59° 59' W, 892 feet, more or less; N 14° 59' W, 14 feet;

Thence continuing through the lands of the Grantors, along a line 10 feet, more or less, southerly from and parallel to said Colonial Pipeline Company's existing pipeline, N 59° 59' W 87 feet, more or less, to a point of exit on the westerly property line of said Grantors; said property line being the easterly Right-Of-Way line of Briley Parkway, being 9 feet, more or less, southerly as measured along said Right-Of-Way line from a fence corner post of said Grantors land.

In addition, Colonial is hereby granted a temporary construction easement thirty (30) feet wide and located on the north side of the above easement from Murray Lane running in a north and westerly direction until the easement crosses an existing pipeline, approximately 203 feet east of Donelson Pike. Thence, said construction easement will extend on the southerly side of said permanent easement except as otherwise shown on the attached Exhibit "A". Said easement shall lapse upon completion of construction.

Colonial recognizes that certain portions of the easement granted hereunder encroaches upon existing T.V.A. and other public utility easements and assumes responsibility for coordinating its construction with the holders of such existing easements and also warrants that it will receive permission for such encroachment and agrees to hold Authority harmless for failure to receive same.

This conveyance includes the right of Colonial Pipeline Company, its servants and agents to construct, operate, maintain, repair, replace and inspect its liquid petroleum products pipeline within the limits of the aforedescribed easement or right-of-way.

To have and to hold said easement or right-of-way to Colonial Pipeline Company, its successors and assigns forever. We do hereby covenant with said Colonial Pipeline Company that we are lawfully seized and possessed of said land in fee simple and have a good right to make this conveyance.

Colonial Pipeline Company hereby covenants that upon completion of construction it will restore the hereinabove described property to its original condition, or as near thereto as is reasonably possible. The Metropolitan Nashville Airport does not waive any claim for damage in any manner for the negligence of any agent, representative or contractor for Colonial Pipeline Company during the construction of any of the aforesaid improvements.

Case 3:20-cv-00809   Document 1-1   Filed 09/18/20   Page 18 of 68 PageID #: 22

As further consideration for the granting of this easement, Colonial Pipeline Company agrees to the following:

(1) Colonial Pipeline agrees to defend and to hold the Metropolitan Nashville Airport Authority free and harmless from loss from each and every claim and demand of whatever nature, made on behalf of or by any person or persons, for any act or omission on the part of Colonial, its agents, servants, employees, suppliers, constructors or tenants. It is the intention that Colonial shall, at all times, and under all circumstances, hold the Metropolitan Nashville Airport Authority free and harmless from any damages or judgments resulting as aforesaid, by reason of any accident or injury to person or property occurring on the premises or improvements thereon, or on any other property now owned or subsequently purchased by the Metropolitan Nashville Airport Authority and on which Colonial has located any facilities, except such as may be caused by the Metropolitan Nashville Airport Authority, its agents, servants, or employees.

In addition to the above, Colonial agrees to deliver to the Metropolitan Nashville Airport Authority, upon the execution of this Agreement, certificates of a continuing public liability and property damage insurance policy satisfactory to the Metropolitan Nashville Airport Authority, indemnifying and holding the Metropolitan Nashville Airport Authority and its Board of Commissioners harmless against any and all claims arising out of the construction and subsequent use of the demised premises, including all of its facilities now located on property owned by the Metropolitan Nashville Airport Authority. Colonial further agrees to add to the policy all easements located on property as such is subsequently acquired by the Metropolitan Nashville Airport Authority. Such insurance shall be in the minimum amount of not less than five hundred

thousand dollars ($500,000.00) for each person, limited to one million dollars ($1,000,000.00) for each occurrence of personal injuries and five hundred thousand dollars ($500,000.00) for property damage. Colonial shall keep the same in force so long as Colonial uses any easements on Airport Authority property.

If Colonial shall at any time fail to insure or keep insured as aforesaid, the Metropolitan Nashville Airport Authority may do all things necessary to effect or maintain such insurance, and all monies expended by it for that purpose shall be repayable by Colonial, in the month the premium or premiums are paid by the Metropolitan Nashville Airport Authority.

(2) All construction will be completed according to the requirements of existing codes and regulations of the Metropolitan Government of Nashville and Davidson County, Tennessee and in compliance with Part 77 of the Federal Aviation Regulations. The plans and specifications for this construction and all subsequent construction must first be approved by the Metropolitan Nashville Airport Authority, which approval shall be evidenced by a letter to Colonial from Metropolitan Nashville Airport Authority's Executive Director. Failure to reach agreement on plans and specifications shall cause an immediate termination of this Agreement and Easement. Colonial shall execute and deliver to the Metropolitan Nashville Airport Authority within thirty (30) days from the date hereof, and prior to construction, a bond in form and with one or more sureties satisfactory to the Metropolitan Nashville Airport Authority against all mechanics' and other liens which may arise or be created in the construction of its improvements, and providing further that when completed, the said improvements and premises shall be free from any and all liens Colonial will secure all necessary permits, and

licenses from any governmental authority including any
right or license needed to cross and/or tunnel public street
right-of-ways.

(3) Colonial will relocate its easements, either
those existing on property now owned or hereafter acquired
by the Metropolitan Nashville Airport Authority, at its sole
cost and expense upon notification by the Metropolitan Nashville
Airport Authority that its lines interfere with the expansion,
development, and/or construction undertaken or to be under-
taken by the Metropolitan Nashville Airport Authority, its
successors, assigns, agents, or employees.

(4) Colonial agrees to operate in such a way
as to fully protect the Airport and its environs from any
environmental pollution either through the air or water.
Colonial further agrres to operate in accordance with Metro-
politan Ordinance No. 68-554, entitled "An Ordinance Amending
the Metropolitan Code, Chapter 4, Subchapter a, by Providing
for Air Pollution Control Within the Metropolitan Government
Area." Colonial further agrees to abide by all rules and
regulations and administrative orders issued by the State
Stream Pollution Control Board or other State agency res-
ponsible for regulating environmental pollution. Colonial
further agrees to obey all rules, regulations and orders
relating to environmental pollution promulgated by the
Federal Government, and specifically those promulgated
under Public Law 91-258, 91st Congress, entitled: "Airport
and Airway Development Act of 1970."

(5) Colonial, for itself, its successors
in interest, and grantees, as part of the consideration hereof,
does hereby covenant and agree, as a covenant running with
the land, that in the event facilities are constructed,
maintained, or otherwise operated on the said property descr:..
in these easements, for a purpose for which a Department of

Transportation program or activity is extended or for another purpose involving the provision of similar services or benefits, it shall maintain and operate such facilities and services in compliance with all requirements imposed pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-assisted programs of the Department of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

Colonial, for itself, its successors in interest and grantees does hereby further covenant and agree as a covenant running with the land, that (1) no person on the grounds of race, color, age, sex, or national origin shall be excluded from participation in, denied the benefit of, or be otherwise subjected to discrimination in the use of said facilities, (2) that in the construction of any improvements on, over, or under such land and the furnishing of services thereon, no person on the grounds of race, color, age, sex, or national origin shall be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination, (3) that it shall use the premises in compliance with all other requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-assisted programs of the Department of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

(6)  In the event of breach of any of the above covenants, the Metropolitan Nashville Airport Authority shall have the right to re-enter said land and the above described easement shall thereupon revert to and vest in and become the absolute property of the Metropolitan Nashville Airport Authority and its assigns.

-7-

(7)   The Metropolitan Nashville Airport Authority reserves unto itself, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the easement and of the real property, hereinafter described, together with the right to cause in said airspace such noise as may be inherent in the operation of aircraft, now known or hereafter used, for navigation of or flight in the said airspace, and for use of said airspace for landing on, taking off from, or operating on the Nashville Metropolitan Airport.

(8)   The Metropolitan Nashville Airport Authority expressly agrees for itself, its successors and assigns, to restrict the height of structures, objects of natural growth and other obstructions in the described easement, and real property to a height of not more than that prescribed in Part 77 of the Federal Aviation Regulations.

(9)   The Metropolitan Nashville Airport Authority expressly agrees for itself, its successors and assigns, to prevent the use of the easement and real property which would interfere with or adversely affect the operation or maintenance of the Nashville Metropolitan Airport or otherwise constitute an airport hazard.

In witness whereof, the parties have executed this document on this the _14th_ day of _MAY_, 1976.

APPROVED AS TO FORM
AND LEGALITY

_Charle E. Dyke_
Griffith and Stokes

METROPOLITAN NASHVILLE
AIRPORT AUTHORITY

By _____
Chairman, Board of Commissioners

_____
Executive Director

WITNESS:

_____
Director, Finance and
Administration

COLONIAL PIPELINE COMPANY

By _Glenn H. Giles_____
RFD

WITNESS:

_____
ASSISTANT SECRETARY

Authorized pursuant to Board of Commissioners'
Res # 76-9 dated _3/19/76_

_____
Secretary



Exhibit "A"

# EXHIBIT 2

# MEMORANDUM OF UNDERSTANDING

# BETWEEN THE STATE OF TENNESSEE DEPARTMENT OF TRANSPORTATION

# AND THE METROPOLITAN NASHVILLE AIRPORT AUTHORITY

WHEREAS, the STATE OF TENNESSEE DEPARTMENT OF TRANSPORTATION ("Department") proposes to construct a project within the geographical limits of the Metropolitan Government of Nashville and Davidson County, Tennessee, tentatively described as the realignment of Donelson Pike/State Route 255, PIN 116896.00 (the "Highway Project"), which Highway Project will require the Department to acquire real property and/or property rights from the METROPOLITAN NASHVILLE AIRPORT AUTHORITY ("MNAA"); and

WHEREAS, the Parties wish to cooperate for the purpose of advancing the Highway Project;

NOW, THEREFORE, the parties agree as follows:

1.	In consideration for the construction and ongoing maintenance of the Highway Project by the Department, MNAA agrees to dedicate to the State of Tennessee at no additional cost a permanent right-of-way easement on real property owned by MNAA, said property tentatively described as the realigned Donelson Pike/State Route 255 (stretching from Murfreesboro Pike to the Interstate 40 Interchange) as required for Highway Project right-of-way, along with any additional temporary easement(s) required for the Highway Project, as will be shown in detail on the Highway Project plans during design development. The Department agrees that said conveyance shall include a reversionary clause such that should the portion of land comprising said permanent right-of-way easement cease to be used as a state route, the Department

will abandon the easement and have no further property interest in the real property owned by MNAA.

2.      MNAA agrees to sell to the State of Tennessee at fair market value the fee simple interest to real property owned by MNAA as required for controlled access right-of-way for the realigned Interstate 40 Interchange portion of the Highway Project, as will be shown in detail on the Highway Project plans during design development.

3.      The Parties agree that the Department will design and construct the Highway Project, inclusive of "tie-ins" to the new MNAA Terminal Drive to be further defined during design development, as depicted in concept on Exhibit A attached hereto. MNAA in turn agrees to design and construct a new Terminal Drive inner roadway system as depicted in concept on Exhibit A (the "Airport Project"). Both Parties acknowledge that the Highway Project and the Airport Project are intended to proceed concurrently and agree to work together to develop a mutually beneficial phasing plan that maintains adequate access to airport facilities at all times and eliminates impacts to the traffic operations of the existing Interstate 40 Interchange throughout the duration of the Highway Project.

4.      The Parties mutually agree to work together to analyze whether any fill material generated by the Airport Project in the area of the existing Donelson Pike alignment on MNAA property might be beneficial for the Department's use in constructing the Highway Project.

5.      The Highway Project is shown on the Department's 2019-21 Comprehensive Multimodal Program with funding for the Right-of-Way Phase in Fiscal Year 2019 and the Construction Phase in Fiscal Year 2021.

6.      The Parties agree that each shall conduct separate National Environmental Policy Act ("NEPA") processes for their respective projects. The Department agrees to provide copies

2

of its completed technical studies and approved NEPA document for the Highway Project to MNAA for inclusion in MNAA's NEPA process for the Airport Project.

7.    Upon completion of the Highway Project, the Department agrees, in accordance with applicable laws, rules, and policies, including but not limited to Tenn. Code Ann. § 12-2-112(a)(8) and Department Policy 340-04, to accept application(s) from MNAA for the conveyance of surplus real property to MNAA, including portions of the existing controlled access right-of-way necessary for the Airport Project as will be shown in detail on the Highway Project plans during design development; however, the Parties understand that some portion(s) of said real property may revert to MNAA by operation of law upon completion of the Highway Project, and the Parties agree that the Department's surplus real property application process shall not apply for any such portion(s) of real property.  The Department further agrees that, in the event that MNAA needs temporary access to State right-of-way in order to accomplish the Airport Project, the Department will issue a *Permit for Project Within Highway Right-of-Way* to MNAA upon MNAA's successful completion of the Department's standard permitting process.

8.    Upon completion of the Project, the Department agrees, in accordance with applicable laws, including but not limited to Title 54, Chapters 1 and 5, Tennessee Code Annotated, to be responsible for maintaining the realigned Donelson Pike/State Route 255 highway constructed as part of the Highway Project.  MNAA understands and agrees that utility installations may be permitted by the Department upon said permanent easement in accordance with applicable laws, rules, and policies, including but not limited to Tenn. Comp. R. & Regs. 1680-06-01.

3

9.  Each Party agrees to be responsible for its own negligent acts or omissions or those of its officers or employees arising out of this Memorandum of Understanding, to the extent permitted by law.

IN WITNESS WHEREOF, the Parties have caused this Memorandum of Understanding to be executed by their duly authorized officials.

**METROPOLITAN NASHVILLE AIRPORT AUTHORITY**

BY: _____     DATE: 11/14/18
A. Dexter Samuels, Ph. D.
MNAA Board Chair

BY: _____     DATE: 11/14/18
Douglas E. Kreulen, AAE
President & CEO

APPROVED AS TO FORM AND LEGALITY:

BY: _____     DATE: 11/14/2018
J. Douglas Sloan, III
Chief Legal Officer

**STATE OF TENNESSEE**
**DEPARTMENT OF TRANSPORTATION**

BY: _____     DATE: 11/16/18
John C. Schroer, Commissioner

APPROVED AS TO FORM AND LEGALITY:

BY: _____     DATE: 11/16/18
John H. Reinbold, General Counsel

4

C:\pw_work\atlnaln019\d8088\dma0315\Collaboration Areas.dwg



NASHVILLE INTERNATIONAL AIRPORT (BNA)
METROPOLITAIN NASHVILLE AIRPORT AUTHORITY
MNAA PROJECT NO. 1801
TERMINAL ACCESS ROAD IMPROVEMENTS

COLLABORATION AREAS

ATKINS

# EXHIBIT 3



NASHVILLE INTERNATIONAL AIRPORT (BNA)
METROPOLITAN NASHVILLE AIRPORT AUTHORITY
MNAA PROJECT NO. 1801
TERMINAL ACCESS ROAD IMPROVEMENTS

OPTION 1A - COMPLETE RELOCATION

ATKINS

CONNECT TO EXISTING 8" AND 12" LINES FROM WEST TO NEW 8" AND 12" LINES TO EAST

NEW 8" AND 12" LINES (BORE)

EXISTING 8" LINE TO BE REMOVED OR ABANDONED

CONNECT NEW 8" LINE FROM WEST TO EXISTING 8" LINE TO THE EAST

EXISTING 8" LINE

EXISTING 8" AND 12" LINES TO BE ABANDONED

NEW 12" LINE (TRENCH)

EXISTING 12" LINE TO BE REMOVED OR ABANDONED

CONNECT NEW 12" LINE FROM WEST TO EXISTING 12" LINE TO THE EAST

NOT ISSUED FOR CONSTRUCTION

Case 3:20-cv-00809   Document 1-1   Filed 09/18/20   Page 33 of 68 PageID #: 37



NEW 8" AND 12" LINES (BORE)

CONNECT TO EXISTING 8"
AND 12" LINES FROM WEST TO
NEW 8" AND 12" LINES TO EAST

EXISTING 8" LINE TO BE
REMOVED OR ABANDONED

CONNECT NEW 8" LINE
FROM WEST TO EXISTING 8" LINE
TO THE EAST

EXISTING 8" LINE

EXISTING 12" LINE

NEW 12" LINE
(TRENCH)

EXISTING 8" AND 12" LINES
TO BE ABANDONED

EXISTING 12" LINE TO
BE REMOVED OR ABANDONED

CONNECT NEW 12" LINE
FROM WEST TO EXISTING 12" LINE
TO THE EAST

NOT ISSUED FOR CONSTRUCTION

ATKINS

NASHVILLE INTERNATIONAL AIRPORT (BNA)
METROPOLITAN NASHVILLE AIRPORT AUTHORITY
MNAA PROJECT NO. 1801
TERMINAL ACCESS ROAD IMPROVEMENTS

OPTION 1B -
PARTIALLY
COMPLETE
RELOCATION



ATKINS

NASHVILLE INTERNATIONAL AIRPORT (BNA)

OPTION 2 -
INTERMEDIATE
RELOCATION

EXISTING 8" AND 12"
LINE TO BE ABANDONED
OR REMOVED

CONNECT NEW 8" LINE FROM
WEST TO EXISTING 8" LINE TO EAST

EXISTING 8" LINE

EXISTING 8" LINE

NEW 8" LINE

EXISTING 12" LINE

NEW 12" LINE

CONNECT NEW 12" LINE FROM
WEST TO EXISTING 12" LINE
TO THE EAST

NEW 8" AND 12" LINE

NEW 8" AND 12" LINES

CONNECT EXISTING 8" TO NEW 8" LINES
FROM WEST TO NEW 8" AND 12" LINES
TO THE EAST

NOT ISSUED FOR CONSTRUCTION



NASHVILLE INTERNATIONAL AIRPORT (BNA)
METROPOLITAIN NASHVILLE AIRPORT AUTHORITY
MNAA PROJECT NO. 1801
TERMINAL ACCESS ROAD IMPROVEMENTS

OPTION 3 -
MINIMUM
RELOCATION

EXISTING 8" AND 12" LINE TO BE ABANDONED OR REMOVED

CONNECT NEW 8" AND 12" LINES FROM WEST TO EXISTING 8" AND 12" LINE TO EAST

EXISTING 8" LINE

NEW 12" LINE TO AVOID CONFLICT WITH BRIDGE AND EW (ROAD) CONFLICT TO BE ADDRESSED BY DOT

EXISTING 8" LINE

EXISTING 12" LINE

CONNECT EXISTING 8" AND 12" LINES FROM WEST TO NEW 8" AND 12" LINES TO THE EAST

NEW 8 AND 12" LINE

NOT ISSUED FOR CONSTRUCTION

# EXHIBIT 4

| From: | Morinec, Jim |
|---|---|
| To: | Jacobsen, Dan; Rodrigues, Igor; Andrew Fleming; Jeff Crisp; Mitchell, Cody |
| Cc: | Holton, Traci; Martin, Margaret; Morrissey, Ted |
| Subject: | Colonial Pipeline Relocation |
| Date: | Thursday, September 19, 2019 4:04:50 PM |
| Attachments: | image003.jpg |
| | Donelson DSP OPT 1.pdf |

A conference call was held on September 19 to discuss the proposed plan for relocating Colonial Pipelines in conjunction with the relocation of Donelson Pike and the MNAA TARI projects.

Participants in the call: Dan Jacobsen, Colonial

Igor Rodrigues, Colonial

Andrew Fleming, Kleinfelder

Jeff Crisp, Kleinfelder

Cody Mitchell, MNAA

Jim Morinec, MNAA

The proposed alignment is shown in the attached plan. Colonial plans to relocate Line 19 from under the end of RWY 2L/20R to parallel Line 20 adjacent to the TVA. The relocation will begin at the L19/L20 split on the east side of the runway and follow L20 to a point east of the new Donelson Pike interchange. From this point both Lines 19 and 20 will follow a new alignment, using directional boring, to a point west of the Discreet Access exit from I-40, where it will reconnect to the existing pipes. The existing pipeline system between these points will be abandoned in place.

Points of Discussion:

1. The existing easement for Line 20 that is adjacent to the TVA may need to be widened to accommodate the relocated Line 19. The design has not been developed yet to determine if this will be required.

2. The new alignment that will be placed by directional boring will require a new easement. This easement travels through MNAA property, MNAA property that will become TDOT ROW, TDOT ROW that will revert back to MNAA, TDOT ROW that will be purchased by MNAA as excess lands, and TDOT ROW that MNAA may acquire for its new monument sign. The timing for all of these transactions is not known. Dan Jacobsen will ask his legal department to initiate conversations with MNAA and TDOT to allow the relocation to proceed in advance of the Donelson and TARI projects.

3. The status of the easements for the existing lines to be abandoned in place needs to be determined.

4. Colonial will provide available alignment and profile information for the lines to be abandoned. MNAA will evaluate this information to determine where the proposed projects will conflict. Colonial will remove the pipes in these areas. Even it the pipe is abandoned, if it is hit Colonial will shut down the entire system until its status is confirmed.

5. It was noted that the proposed directional boring will pass near a water quality unit in Lot B and a TVA tower in the northwest corner of lot C. The pipeline profile should be able to avoid these obstacles, depending on the geotechnical conditions.

6. Colonial asked for MNAA's contact with TVA.

7. The project will involve two crossings of McCrory Creek. MNAA will provide permitting information based on a recently completed project for FAA cables.

8. The Colonial project is anticipated to be completed in mid-2021. All existing pipes will remain in service until the product transmission can be switched to the relocated system.

9. It was pointed out the proposed relocation will also cross the existing sanitary sewer and FAA power and communication lines.
10. Colonial will fully assemble the pipes that will be pulled into the directional bores. Cody Mitchell suggested a construction easement would typically not be required for the assembly area. Due to the amount of area required for this assembly, MNAA's legal department will be consulted to verify an easement will not be required.

Please let me know of any corrections to this record.

**James Morinec, PE**

Project Manager, Design
Development & Engineering
Employed by: AECOM
Office: 615-275-2430
Cell: 615-478-2113
One Terminal Drive, Ste. 501
Nashville, Tennessee 37214



**FLYNASHVILLE.COM**

# EXHIBIT 5



**STATE OF TENNESSEE**
**DEPARTMENT OF TRANSPORTATION**

REGION 3 UTILITIES DIVISION
6601 CENTENNIAL BOULEVARD
NASHVILLE, TENNESSEE 37243-0360
(615) 350-4200

**CLAY BRIGHT**
COMMISSIONER

**BILL LEE**
GOVERNOR

January 23, 2020

Mr. Jim Avioli, Managing Director
Commercial Affairs
Colonial Pipeline Co.
1185 Sanctuary Parkway, Suite 100
Alpharetta, GA 30009

Dear Mr. Avioli:

After review, Colonial Pipeline's submitted A-Date relocation package for the I-40/Donelson Pike Interchange and Relocation Project (PIN 116896.00) is rejected. The submitted package requests 100% reimbursement for engineering and construction for a proposed relocation that mitigates conflicts created by two separate projects: the TDOT I-40/Donelson Pike Project and the MNAA TARI Project.

TDOT is able to reimburse Colonial for the portion of relocation that is required due only to a conflict within the State's project limits. There are single perpendicular crossings for both Line 19 and Line 20 that are in conflict with the proposed relocation of S.R. 255 (Donelson Pike). Relocation efforts due to conflicts associated with the MNAA TARI project will not be reimbursable by TDOT.

A "baseline" relocation plan and cost estimate (engineering & construction) for the relocation work that is necessitated by conflicts with the TDOT project shall be provided by Colonial to the state. In the event that an alternate relocation plan has greater benefits to Colonial Pipeline, such as a single relocation that complements both the TDOT and MNAA projects, then Colonial shall provide a second submittal containing the alternate relocation plan and cost estimate (engineering & construction). Once the preferred relocation plan is reviewed and approved, Colonial will only be eligible for reimbursement in the amount shown on the approved "baseline" cost estimate that mitigates conflicts created by the TDOT project only.

Additional information including the exact location of the contaminated soils referenced in the submittal is required to provide justification for the selection of the relocation alignment for Line 19. If there are contaminated soils that impact how Colonial is able to relocate Line 19 in order to accommodate the TDOT project (e.g. HDD limits extended to the east of the strike location) then any such additional work should be included in the "baseline" plan and cost estimate referenced above.

At your earliest convenience, please resubmit a revised A-Date package that represents the engineering and construction costs for the mitigation of the TDOT I-40/Donelson project only.

If I can be of further assistance, please do not hesitate to contact me by phone at (615)350-4234 or by email at iraj.eghbali@tn.gov

Respectfully,

Iraj Eghbali
Senior Transportation Project Specialist

CC: Mr. Shane Hester
    Ms. Leslie South
    Mr. Freddy Miller
    Mr. John Reinbold
    Mr. Jon Zirkle
    Mr. Jeff Hoge
    Mr. Michael Horlacher
    Mr. Cody Crews (GS)

# EXHIBIT 6



**Nashville
International
Airport**

March 24, 2020

Colonial Pipeline Company
Attn: Preston Morrison
1185 Sanctuary Parkway, Suite 100
Alpharetta, GA 30009

Re: Easement Relocation

Dear Mr. Morrison:

Colonial Pipeline Company ("Colonial") and Metropolitan Nashville Airport Authority ("MNAA") are parties to a Dedication of Easement and Agreement dated May 14, 1976 (the "Easement") in which MNAA granted Colonial a permanent easement for the construction, operation, and maintenance of a liquid petroleum pipeline.

Colonial is aware from prior discussions with MNAA dating back to July 2018 that the current location of Colonial's easements (shown on the attached drawing) interfere with MNAA's plans for expansion and related construction and that, with respect to movement of the lines, time is now of the essence.

MNAA's plans to expand their airport operations require a relocation of the pipeline and the easement. All points of conflict with the existing pipeline and easement are shown on the attached drawing. Section 3 of the Easement provides that Colonial will relocate its easements at its sole cost and expense upon notification from MNAA that its lines interfere with the expansion, development, and/or construction to be undertaken by MNAA.

This letter shall serve as MNAA's formal notice of Colonial's easement interference and its demand that Colonial relocate its pipelines at its sole cost and expense as required under Section 3 of the Easement.

We appreciate your cooperation and look forward to working with Colonial in the immediate future to finalize plans to relocate the easements. MNAA will be in touch soon to finalize a plan to relocate the pipeline.

Feel free to contact me should you have any questions.

Regards,

John A. Corbitt
Assistant VP of Real Estate

Be Nashville.

1



NOTE:
ALL IDENTIFIED CONFLICT LOCATIONS ARE BASED ON A
35% PRELIMINARY DESIGN FOR THE TARI PROJECT.
ACTUAL CONFLICT POINTS WILL BE DETERMINED
DURING FINAL PROJECT DESIGN.

ALL IDENTIFIED CONFLICT LOCATIONS ARE EXCLUSIVE
OF CONFLICTS ASSOCIATED WITH THE TDOT DONELSON
PK RELOCATION PROJECT.

PLAN VIEW
SCALE 1" = 400'

BEGIN - PROPOSED
WATER MAIN AND
ROADWAY WIDENING

END - PROPOSED
WATER MAIN AND
ROADWAY WIDENING

BEGIN - ROADWAY
RAMP GRADING

END - ROADWAY RAMP GRADING

ROADWAY RAMP GRADING

PARKING LOT EXPANSION

ROADWAY GRADING
AND DRAINAGE

BRIDGE AND RETAINING
WALL FOUNDATIONS

REVENUE CONTROL
FOUNDATIONS

ROADWAY GRADING

TARI ROADWAYS
AND PARKING LOTS

DRAWN BY: JGM
CK. BY:
DATE:

NOT FOR
CONSTRUCTION

METROPOLITAN NASHVILLE AIRPORT AUTHORITY
TERMINAL ACCESS ROADWAY IMPROVEMENTS (TARI)

COLONIAL PIPELINE - POINTS OF CONFLICT

BNA | Nashville International Airport

# EXHIBIT 7



# Colonial Pipeline Company

**Meg Blackwood, Deputy General Counsel**

**Mobile Phone:** **(678) 221-1960**
mblackwood@colpipe.com

April 8, 2020

John A. Corbitt
Assistant V.P. of Real Estate
Metropolitan Nashville Airport Authority
One Terminal Drive, Suite 501
Nashville, TN 37214

      Re:     Colonial Pipeline Easement Relocation

Dear Mr. Corbitt:

I am responding to your letter of March 24, 2020, to Colonial Pipeline Company (Colonial) providing notice that the expansion plans of Metropolitan Nashville Airport Authority (MNAA) require relocation of a Colonial pipeline and easement. Your letter was addressed to Skip Morrison, but, as I mentioned to you last week via e-mail, Mr. Morrison retired from Colonial in December 2017. That caused some delay as the letter had to get routed to me while we are on work from home directives as a result of the pandemic. Please be sure that any further correspondence is directed to the General Counsel or to me. Also, please note the conflicts marked on the drawing attached to your letter will affect portions of two Colonial pipelines and related easements. Colonial acknowledges your letter as the notice required under section 3 of the Easement Agreement referenced in your letter for all easements affected by these conflicts.

As MNAA is aware, for some time, Colonial has been in the process of planning a relocation of its two pipelines (Lines 19 and 20) that are impacted by the planned Tennessee Department of Transportation (TDOT) Donelson Pike I-40 interchange expansion and relocation project and MNAA's planned expansion project. It is our understanding TDOT and MNAA are coordinating various aspects of these two projects. Indeed, since at least September 2018, when TDOT hosted a field review meeting that was attended by representatives from TDOT, MNAA, Colonial and other impacted utilities, TDOT has taken the lead for utility relocation on both projects. Our understanding is that TDOT has shared information with MNAA about the impact that MNAA's and TDOT's projects will have on Colonial's pipelines.

The relocation of Colonial's pipelines is a complex, multi-million dollar project that takes a great deal of coordination and planning, particularly when (as is the case here) the relocation is done at the request of a third-party and not because of Colonial's own operational needs. In this specific instance, the process is even more complicated because of the incident that occurred on April 9, 2019, when a TDOT geotechnical crew, working in conjunction with MNAA, struck Colonial's Line 19.

The contamination from that incident has caused Colonial to have to reconfigure its relocation plans. Nevertheless, Colonial remains committed, as we have been since 2018, to working with TDOT and MNAA to accomplish the requested relocation.

It is not cost effective or desirable for Colonial to do separate pipeline relocation projects to address the TDOT and MNAA projects. Accordingly, Colonial has been in discussions with TDOT and MNAA for some time about Colonial's proposed plan to do a single project, relocating both pipelines in a manner that would address all conflicts with the TDOT project and the MNAA project. In fact, representatives from MNAA and Colonial have had several meetings since 2018 (both in Alpharetta and Nashville) to discuss various technical aspects of the relocation, including the proposed route of the relocation. Colonial trusts that MNAA will continue to work with TDOT and us on that effort. We are happy to discuss all of this with you.

Finally, aside from the complicated technical aspects of relocating our lines, the associated costs (which require Board level approval at Colonial) are directly tied to the scope of the project that has not been finalized. There are complicated interwoven issues related to payment for our relocation caused by the presence of the two projects, which need to be resolved before we seek Board level approval. We reserve all of our rights, including but not limited to rights under the Easement Agreement, with respect to payment for the proposed relocation.

Thus, we appreciate the notice under section 3 of the Easement Agreement, and we remain committed to working cooperatively to finalize the scope, timing and payment of the relocation projects. We look forward to making further progress with MNAA and TDOT on these topics. Thank you.

Best regards,

/s/ *Meg Blackwood*

Meg Blackwood
Deputy General Counsel, Colonial Pipeline Company

**Error! Unknown document property name.**

# EXHIBIT 8



**STATE OF TENNESSEE**
**DEPARTMENT OF TRANSPORTATION**
**REGION 3 PROJECT DEVELOPMENT/UTILITIES DIVISION**
6601 CENTENNIAL BOULEVARD
NASHVILLE, TENNESSEE  37243-0360
(615) 350-4250

**CLAY BRIGHT**
COMMISSIONER

**BILL LEE**
GOVERNOR

July 16, 2020

Mr. Jim Avioli, Managing Director
Commercial Affairs
Colonial Pipeline Co.
1185 Sanctuary Parkway, Suite 100
Alpharetta, GA 30009

**Subject:** Davidson Co. PIN 116896/I-40 /Donelson Pike Interchange gas pipeline relocation package

Dear Mr. Avioli;

After review, Colonial's re-submitted A-Date relocation package for the I-40/Donelson Pike Interchange and Relocation Project (PIN 116896.00) dated May 20, 2020 is rejected. The submitted package reflects relocating Line 19 (12" pipeline) alongside/parallel to Line 20 (8" pipeline) requiring an additional 5,800 linear feet relocation of Line 19. TDOT and the Federal Highway Administration (FHWA) acknowledges that the consolidation of Colonial's facilities on the Metro Nashville Airport Authority's property is an improvement for the long term maintenance and longevity of the pipeline; however, this improvement is defined as "betterment" and cannot be fully reimbursed by TDOT for this project.

TDOT is able to reimburse Colonial for the portion of relocation that is required due only to a conflict within the State's project limits. There are single perpendicular crossings for both Line 19 and Line 20 that are in conflict with the proposed relocation of S.R. 255 (Donelson Pike). Relocation efforts due to conflicts associated with the MNAA TARI project or to improve existing infrastructure will not be reimbursable by TDOT.

Attached is an example "baseline" relocation plan prepared by an independent consultant on the behalf of TDOT. The plan reflects relocation work necessitated by conflicts with the TDOT project to mitigate the 41' cut on Line 19 and 37' fill over Line 20. Both relocations require a Horizontal Direction Drill (HDD) across the proposed TDOT project limits to provide adequate vertical separation from the proposed excavation and/or infrastructure to protect the pipeline from TDOT construction activities. Based on field data collected from the April 9, 2019 line strike, Line 19 is shown to be relocated south of the line strike location with the proposed HDD entry point located approximately 260' south-east of the strike location. Using historical data on relocation costs across the southeast for similar pipeline relocations it

is estimated that a "baseline" relocation would cost approximately $6 million or 50% of Colonial Pipeline's estimate submitted on May 20, 2020.

To request reimbursement for this project, a "baseline" relocation plan and cost estimate (engineering & construction) for the relocation work that is necessitated by conflicts with the TDOT project shall be provided by Colonial to the state. Once the preferred relocation plan is reviewed and approved, Colonial will only be eligible for reimbursement in the amount shown on the approved "baseline" cost estimate that mitigates conflicts created by the TDOT project only. Colonial may still pursue other routes that do not conflict with either project like the one attached or the originally proposed or other but the reimbursement rate regardless of total cost will not exceed the "baseline" estimate.

At your earliest convenience, please resubmit a revised A-Date package that represents the engineering and construction costs for the mitigation of the TDOT I-40/Donelson project only. The package should be addressed to Mr. Iraj Eghbali, TDOT Region 3 Utility Manager.

If you have further questions or need more information you may contact me at 615-350-4234 or by email at iraj.eghbali@tn.gov

Sincerely,

Iraj Eghbali
Senior Transportation Project Specialist
TDOT Region 3 Utility Office


Cc:     Mr. Jeff Hoge
        Mr. Michael Horlacher
        Mr. Shane Hester
        Mr. Jon Zirkle
        Ms. Leslie South
        Mr. Freddy Miller
        Mr. John Reinbold
        Mr. Cody Crews (GS)

# EXHIBIT 9



**From:** Blackwood, Meg <mblackwood@colpipe.com>
**Sent:** Thursday, August 13, 2020 12:55 PM
**To:** Paul Davidson <Paul.Davidson@wallerlaw.com>; 'Hughes, Wearen' <WHughes@bassberry.com>
**Cc:** Goddard, Drew <DGoddard@bassberry.com>; Morrissey, Ted <Ted.Morrissey@flynashville.com>
**Subject:** RE: CP/MNAA line relocation meeting

■ **External Message**

Paul:

Without agreeing to the specific statements in your email, Colonial will abide by your postponement of the meeting. I will send out the cancelation notification.

Colonial remains willing to meet in the future under the proper circumstances. We should continue to discuss when that meeting should take place and the appropriate agenda for it. In the meantime, if your clients have any specific questions or concerns related to Colonial and the proposed relocation project that they would like to discuss with us, we would be happy to talk.

Best regards,
Meg



**Meg T. Blackwood** | Deputy General Counsel
**Colonial Pipeline Company**
o. 678.762.2644 | m. 678.221.1960 | www.colpipe.com

---

Colonial Pipeline Notice - This e-mail message (including any attachment) contains information that may be confidential, be protected by attorney-client or other privilege, or constitute non-public information. If you are not the intended recipient, please notify the sender by electronic mail or telephone and delete the original message without making any copies. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

---

**From:** Paul Davidson <Paul.Davidson@wallerlaw.com>
**Sent:** Thursday, August 13, 2020 12:18 PM
**To:** Blackwood, Meg <mblackwood@colpipe.com>; 'Hughes, Wearen' <WHughes@bassberry.com>
**Cc:** Goddard, Drew <DGoddard@bassberry.com>; Morrissey, Ted <Ted.Morrissey@flynashville.com>
**Subject:** [External Message] RE: CP/MNAA line relocation meeting

WARNING: This email originated outside of Colonial Pipeline.
DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

---

Meg, the meeting we proposed between TDOT, Colonial and the Airport was meant to get all parties involved in the pipeline relocation to jointly identify and resolve any open issues so that the Airport's expansion project could move forward without further delay.  TDOT and the Airport are transparently coordinating their efforts in this regard as efficiently and cost effectively as possible.  Colonial's refusal to provide the Airport with a clear and concise statement of its position regarding movement of the pipeline and its refusal to discuss any open issues or concerns together with TDOT and the Airport unnecessarily frustrates those efforts.  Given the restrictions Colonial unilaterally imposes in your email below, the Airport believes it best to postpone any meeting until after Colonial identifies and communicates what issues related to the pipeline relocation it believes are so unique to the Airport that they should not be discussed in TDOT's presence.  We appreciate Colonial taking the time it had set aside for today's meeting to do so.

Thank you,

Paul

Paul S. Davidson

Partner

## waller

Waller Lansden Dortch & Davis, LLP

511 Union Street, Suite 2700

Nashville, TN 37219

(o)615.850.8942

(m)615.504.0543

pdavidson@wallerlaw.com@wallerlaw.com

vCard

---

**From:** Blackwood, Meg <mblackwood@colpipe.com>
**Sent:** Wednesday, August 12, 2020 8:41 PM
**To:** Paul Davidson <Paul.Davidson@wallerlaw.com>; 'Hughes, Wearen' <WHughes@bassberry.com>
**Cc:** Goddard, Drew <DGoddard@bassberry.com>; Morrissey, Ted <Ted.Morrissey@flynashville.com>
**Subject:** RE: CP/MNAA line relocation meeting

🟥 **External Message**

Paul:

In the spirit of good faith and cooperation, we are willing to attend the meeting tomorrow. However, we do not agree that the agenda items you've listed are appropriate for the audience who will be there. This meeting was meant to be a discussion between Colonial and MNAA to discuss issues that are unique to our clients. It is not appropriate for TDOT to be involved in those conversations, and so if they attend the meeting tomorrow, we will not discuss those issues. To reiterate what I've said before, several times, we are not opposed to having another meeting with TDOT and MNAA to discuss the issues that may apply to everyone, but we are not willing to discuss concerns that are uniquely MNAA/Colonial in the presence of TDOT.

Best regards,

 **Meg T. Blackwood** | Deputy General Counsel
**Colonial Pipeline Company**
o. 678.762.2644 | m. 678.221.1960 | www.colpipe.com

   

---

Colonial Pipeline Notice - This e-mail message (including any attachment) contains information that may be confidential, be protected by attorney-client or other privilege, or constitute non-public information. If you are not the intended recipient, please notify the sender by electronic mail or telephone and delete the

original message without making any copies. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

**From:** Paul Davidson <Paul.Davidson@wallerlaw.com>
**Sent:** Wednesday, August 12, 2020 7:37 PM
**To:** Blackwood, Meg <mblackwood@colpipe.com>; 'Hughes, Wearen' <WHughes@bassberry.com>
**Cc:** Goddard, Drew <DGoddard@bassberry.com>; Morrissey, Ted <Ted.Morrissey@flynashville.com>
**Subject:** [External Message] RE: CP/MNAA line relocation meeting

WARNING: This email originated outside of Colonial Pipeline.
DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Meg, I include a proposed agenda below that has been approved by the Airport and TDOT. TDOT's representatives at the meeting, if Colonial will reconsider and participate, will be Shane Hester, Regional Director of Project Development. He is familiar with the pipeline relocation issues and has consistently participated in meetings and teleconferences with both the Airport and Colonial. Leslie South, Deputy General Counsel and John Reinbold also plan to join the meeting. On the Airport's side, Margaret Martin, Traci Holton, Cody Mitchell, Jim Morinec, Ted Morrissey and I plan to attend.

The Airport is committed to coordinate efforts with TDOT to minimize public costs and project delays. We have previously made it clear that it is time for the Airport, TDOT and Colonial to join in a meeting to discuss all open pipeline relocation issues.

I.      Introductions of Participants and their roles (Airport, Colonial, TDOT)
II.     Airport's Summary of Expansion Plans and Prior Discussions with Colonial re Pipeline Relocation
III.    Timeline for Pipeline Relocation
  a.     Airport's requirements
  b.     TDOT's requirements
IV.     Colonial's Relocation Route
  a.     Timing of final plan submittal
  b.     Time to complete
  c.     Open business, governance, technical or legal issues
  d.     Impacts/complications from line strike

V.     Funding issues

VI.    Next Steps


Thank you,


Paul

Paul S. Davidson

Partner

## waller

Waller Lansden Dortch & Davis, LLP

511 Union Street, Suite 2700

Nashville, TN 37219

(o)615.850.8942

(m)615.504.0543

pdavidson@wallerlaw.com@wallerlaw.com

vCard

---

**From:** Blackwood, Meg <mblackwood@colpipe.com>
**Sent:** Wednesday, August 12, 2020 4:08 PM
**To:** Paul Davidson <Paul.Davidson@wallerlaw.com>; 'Hughes, Wearen' <WHughes@bassberry.com>
**Cc:** Goddard, Drew <DGoddard@bassberry.com>
**Subject:** RE: CP/MNAA line relocation meeting


<mark>**External Message**</mark>

Paul:

Thank you for your note. We do not agree that TDOT should attend this meeting and are not comfortable moving forward tomorrow with TDOT present. While we prefer to do one relocation project, rather than move piecemeal, as my letter stated, there are issues with the relocation project that are distinct to TDOT and your client. We are addressing the TDOT issues with TDOT, separately, and we want to do the same thing with your client. If it makes sense in the future to invite TDOT to meetings, we can do that, but I would ask that we have those discussions and reach an agreement before you forward meeting invitations to TDOT or other third-parties.

If your client is unwilling to proceed without TDOT's presence at the meeting, please let me know, and I'll cancel the meeting. However, if we are moving forward tomorrow, we are still waiting on the Airport's proposed agenda items. Please send those along so that we're prepared to address your

client's questions.  I sent you our items yesterday.

Best regards,
Meg

 **Meg T. Blackwood** | Deputy General Counsel
Colonial Pipeline Company
o. 678.762.2644 | m. 678.221.1960 | [www.colpipe.com](http://www.colpipe.com)

   

Colonial Pipeline Notice - This e-mail message (including any attachment) contains information that may be confidential, be protected by attorney-client or other privilege, or constitute non-public information. If you are not the intended recipient, please notify the sender by electronic mail or telephone and delete the original message without making any copies. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

**From:** Paul Davidson <[Paul.Davidson@wallerlaw.com](mailto:Paul.Davidson@wallerlaw.com)>
**Sent:** Tuesday, August 11, 2020 6:04 PM
**To:** Blackwood, Meg <[mblackwood@colpipe.com](mailto:mblackwood@colpipe.com)>; 'Hughes, Wearen' <[WHughes@bassberry.com](mailto:WHughes@bassberry.com)>
**Cc:** Goddard, Drew <[DGoddard@bassberry.com](mailto:DGoddard@bassberry.com)>
**Subject:** [External Message] RE: CP/MNAA line relocation meeting

WARNING: This email originated outside of Colonial Pipeline.
DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Meg, for many of the reasons stated in your attached letter, and the fact that there seems to be a disconnect between what we've heard from Colonial and TDOT as to the status, we feel it appropriate to invite TDOT to this meeting.  Sorry if my message wasn't clear.  I passed the invite to John Reinbold so that he could determine who would be best on the project side to attend from TDOT.  I believe he will let us know.

Hope that helps,

Paul

Paul S. Davidson
Partner



[Waller Lansden Dortch & Davis, LLP](#)
511 Union Street, Suite 2700

Nashville, TN 37219

(o)615.850.8942

(m)615.504.0543

[pdavidson@wallerlaw.com@wallerlaw.com](mailto:pdavidson@wallerlaw.com@wallerlaw.com)

vCard

---

**From:** Blackwood, Meg <[mblackwood@colpipe.com](mailto:mblackwood@colpipe.com)>
**Sent:** Tuesday, August 11, 2020 4:17 PM
**To:** Paul Davidson <[Paul.Davidson@wallerlaw.com](mailto:Paul.Davidson@wallerlaw.com)>; 'Hughes, Wearen' <[WHughes@bassberry.com](mailto:WHughes@bassberry.com)>
**Cc:** Goddard, Drew <[DGoddard@bassberry.com](mailto:DGoddard@bassberry.com)>
**Subject:** RE: CP/MNAA line relocation meeting

<span style="background-color: yellow">█ **External Message**</span>

Paul:

We don't think it's necessary or productive to include TDOT on this particular call. We understood the purpose of this call was to exchange information about the Airport's intended work, how that impacts Colonial, etc. As I mentioned during our prior conversation, Colonial has had many conversations with TDOT about their Donelson Pike project and how that impacts the pipeline, including one last week. If you can provide me with some clarity about why you think it's important to have TDOT, and in particular their legal counsel versus their technical/engineering people, participate in this meeting, that would be helpful.

 **Meg T. Blackwood** | Deputy General Counsel
**Colonial Pipeline Company**
o. 678.762.2644 | m. 678.221.1960 | **www.colpipe.com**

   

Colonial Pipeline Notice - This e-mail message (including any attachment) contains information that may be confidential, be protected by attorney-client or other privilege, or constitute non-public information. If you are not the intended recipient, please notify the sender by electronic mail or telephone and delete the original message without making any copies. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

**From:** Paul Davidson <[Paul.Davidson@wallerlaw.com](mailto:Paul.Davidson@wallerlaw.com)>
**Sent:** Tuesday, August 11, 2020 3:14 PM
**To:** Blackwood, Meg <[mblackwood@colpipe.com](mailto:mblackwood@colpipe.com)>; 'Hughes, Wearen' <[WHughes@bassberry.com](mailto:WHughes@bassberry.com)>
**Cc:** Goddard, Drew <[DGoddard@bassberry.com](mailto:DGoddard@bassberry.com)>
**Subject:** [External Message] RE: CP/MNAA line relocation meeting

WARNING: This email originated outside of Colonial Pipeline.
DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Meg, I've forwarded the invitation to Ted Morrissey and John Reinbold.  Both the Airport and TDOT will have representatives on the call.  I will let you who when I know.

Thank you,

Paul
Paul S. Davidson
Partner

**waller**

Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
(o)615.850.8942
(m)615.504.0543
pdavidson@wallerlaw.com@wallerlaw.com
vCard

---

**From:** Blackwood, Meg <mblackwood@colpipe.com>
**Sent:** Tuesday, August 11, 2020 11:26 AM
**To:** Paul Davidson <Paul.Davidson@wallerlaw.com>; 'Hughes, Wearen' <WHughes@bassberry.com>
**Cc:** Goddard, Drew <DGoddard@bassberry.com>
**Subject:** RE: CP/MNAA line relocation meeting

**External Message**

The time on Friday is no longer available.  Our Managing Director, Commercial Affairs has a conflict on Friday.



**Meg T. Blackwood** | Deputy General Counsel
Colonial Pipeline Company
o. 678.762.2644 | m. 678.221.1960 | www.colpipe.com

  

Colonial Pipeline Notice - This e-mail message (including any attachment) contains information that may be confidential, be protected by attorney-client or other privilege, or constitute non-public information. If you are not the intended recipient, please notify the sender by electronic mail or telephone and delete the original message without making any copies. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

**From:** Paul Davidson <Paul.Davidson@wallerlaw.com>
**Sent:** Tuesday, August 11, 2020 12:24 PM
**To:** 'Hughes, Wearen' <WHughes@bassberry.com>
**Cc:** Goddard, Drew <DGoddard@bassberry.com>; Blackwood, Meg <mblackwood@colpipe.com>
**Subject:** [External Message] RE: CP/MNAA line relocation meeting

WARNING: This email originated outside of Colonial Pipeline.
DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

And please let me know if times on Friday time are still available.

Paul S. Davidson
Partner

waller

Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
(o)615.850.8942
(m)615.504.0543
pdavidson@wallerlaw.com@wallerlaw.com
vCard

**From:** Hughes, Wearen <WHughes@bassberry.com>
**Sent:** Tuesday, August 11, 2020 11:22 AM
**To:** Paul Davidson <Paul.Davidson@wallerlaw.com>
**Cc:** Goddard, Drew <DGoddard@bassberry.com>; Meg Blackwood (mblackwood@colpipe.com)
<mblackwood@colpipe.com>
**Subject:** RE: CP/MNAA line relocation meeting

**External Message**

Meg:  do you have that time handy?  I'm looking for your email to me that gave that.

**Wearen Hughes**
Member

**Bass, Berry & Sims PLC**
150 Third Avenue South, Suite 2800 • Nashville, TN 37201
615-742-6225 phone • 615-742-2725 fax
WHughes@bassberry.com • www.bassberry.com

---

**From:** Paul Davidson <Paul.Davidson@wallerlaw.com>
**Sent:** Tuesday, August 11, 2020 11:17 AM
**To:** Hughes, Wearen <WHughes@bassberry.com>
**Cc:** Goddard, Drew <DGoddard@bassberry.com>; Meg Blackwood (mblackwood@colpipe.com)
<mblackwood@colpipe.com>
**Subject:** RE: CP/MNAA line relocation meeting

What time on Thursday do you propose?

Paul S. Davidson
Partner

**waller**
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
(o)615.850.8942
(m)615.504.0543
pdavidson@wallerlaw.com@wallerlaw.com
vCard

---

**From:** Hughes, Wearen <WHughes@bassberry.com>
**Sent:** Tuesday, August 11, 2020 11:12 AM
**To:** Paul Davidson <Paul.Davidson@wallerlaw.com>
**Cc:** Goddard, Drew <DGoddard@bassberry.com>; Meg Blackwood (mblackwood@colpipe.com)
<mblackwood@colpipe.com>
**Subject:** CP/MNAA line relocation meeting

<span style="background-color: yellow">**External Message**</span>

Meg asked me to convey this information to you.  The following individuals will be attending the

meeting on Thursday re the line relocation on behalf of Colonial: Jim Avioli (Managing Director, Commercial Affairs), Leo Bermudez (Director of Project Management) and Don Pozin (Manager, Relocation Projects). Meg will be attending the meeting also, because you intend to participate, but CP views this more of a business-to-business than a legal meeting. CP anticipates the Airport will initiate or lead the discussion.

CP does not have a formal agenda, but the items it would recommend discussing are:

- Overview of the work that the Airport wants to do and timetable to complete it

- Discussion of Colonial proposed relocation, including impacts/complications from line strike

- Discussion of funding and timeline.

There might be some other things that arise during the course of the conversation, but those are the main points.

**Wearen Hughes**
Member

**Bass, Berry & Sims PLC**
150 Third Avenue South, Suite 2800 • Nashville, TN 37201
615-742-6225 phone • 615-742-2725 fax
WHughes@bassberry.com • www.bassberry.com

This email may contain privileged and confidential information and is meant only for the use of the specific intended addressee(s). Your receipt is not intended to waive any applicable privilege. If you have received this email in error, please delete it and immediately notify the sender by separate email.

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this message in error, you are proh bited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message.

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this message in error, you are proh bited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message.

Colonial Pipeline Notice - This e-mail message (including any attachment) contains information that may be confidential, be protected by attorney-client or other privilege, or constitute non-public information. If you are not the intended recipient, please notify the sender by electronic mail or telephone and delete the original message without making any copies. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this message in error, you are proh bited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message.

Colonial Pipeline Notice - This e-mail message (including any attachment) contains information that may be confidential, be protected by attorney-client or other privilege, or constitute non-public information. If you are not the intended recipient, please notify the sender by electronic mail or telephone and delete the original message without making any copies. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this message in error, you are proh bited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message.

Colonial Pipeline Notice - This e-mail message (including any attachment) contains information that may be confidential, be protected by attorney-client or other privilege, or constitute non-public information. If you are not the intended recipient, please notify the sender by electronic mail or telephone and delete the original message without making any copies. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this message in error, you are proh bited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message.

Colonial Pipeline Notice - This e-mail message (including any attachment) contains information that may be confidential, be protected by attorney-client or other privilege, or constitute non-public information. If you are not the intended recipient, please notify the sender by electronic mail or telephone and delete the original message without making any copies. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

The information contained in this message and any attachments is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this message in error, you are proh bited from copying, distributing, or using the information. Please contact the sender immediately by return e-mail and delete the original message.

Colonial Pipeline Notice - This e-mail message (including any attachment) contains information that may be confidential, be protected by attorney-client or other privilege, or constitute non-public information. If you are not the intended recipient, please notify the sender by electronic mail or telephone and delete the original message without making any copies. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
20TH JUDICIAL DISTRICT, DAVIDSON COUNTY, TENNESSEE

METROPOLITAN NASHVILLE             )
AIRPORT AUTHORITY,                 )
                                   )
      Plaintiff,                   )
                                   )
v.                                 )
                                   )    Case No. 20-0881-I
COLONIAL PIPELINE COMPANY,         )
                                   )
      Defendant.                   )
                                   )
                                   )
                                   )
                                   )

## PLAINTIFF'S MOTION FOR CASE MANAGEMENT CONFERENCE

      Plaintiff Metropolitan Nashville Airport Authority (the "Airport" or "Plaintiff") moves

the Court pursuant to Tennessee Rules of Civil Procedure 16 and 57 to conduct a conference

with the attorneys for the parties and thereafter enter a scheduling order. Because time is of the

essence, the Airport requests the Court conduct such a conference as soon as permitted by the

Court's schedule. In support of its Motion, Plaintiff states as follows:

      1.     Plaintiff commenced this action seeking a declaratory judgment and specific

enforcement of an easement agreement that requires Defendant Colonial Pipeline Company

("Colonial") to relocate its liquid petroleum products pipeline to make way for the Airport's

continuing renovation and expansion program, "BNA Vision."

      2.     The Complaint alleges months of prevarications and delays by Colonial that, if

allowed to continue without a declaration of the rights and responsibilities of the parties, will

result in irreparable harm to the BNA Vision project. Traffic congestion at the Airport is already

noticeable. Without improvements that require relocation of the pipeline, the result will be

significant back-ups by 2023 and gridlock by 2028. In order to meet construction schedules and

avoid undue delay, the pipeline must be moved by mid-2021. Colonial, however, has refused to honor its agreement to move the pipeline on schedule and is engaged in a hold up of the relocation in an attempt to extract unwarranted concessions from both the Tennessee Department of Transportation ("TDOT") and the Airport.

3.      Tennessee Rule of Civil Procedure 57 provides that "[t]he court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar." *See, e.g., Carter v. Taylor,* 409 F. Supp. 1162, 1164 (E.D. Tenn. Sept. 25, 1975); *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 Fed. Appx. 431, 441 (6th Cir. Dec. 26, 2018) ("Tennessee provides a clear and concise avenue for a plaintiff's declaratory judgment action to proceed through Tenn. Code Ann. § 29-14-101 [*et seq.*] and Tenn. R. Civ. P. 57."). The Advisory Commission comments to Rule 57 make clear that "[t]he discretionary provision for a speedy hearing is designated to avoid delay in the trial of pending suits." Here, the public interest in expedient completion of the BNA Vision project calls for active case management and speedy resolution. Given the extensive project delays that have already occurred due to Colonial's breach, the Airport respectfully requests this case be advanced on the calendar and given an expedited timeline for resolution.

4.      "Trial courts are afforded broad judicial discretion in procedural matters in order to expedite litigation and to preserve fundamental rights of the parties." *Douglas v. Estate of Robertson,* 876 S.W.2d 95, 97 (Tenn. 1994). "Tennessee Rule of Civil Procedure 16.01 authorizes the trial court to conduct planning conferences and enter scheduling orders." *Mikheil v. Nashville Gen. Hosp.*, 2016 Tenn. App. LEXIS 65, *16 (Tenn. Ct. App. Jan. 29, 2016). Specifically, the Rule provides that "[i]n any action, the court may in its discretion, or upon motion of any party, conduct a conference with the attorneys for the parties . . . in person or by

telephone, mail, or other suitable means, and thereafter enter a scheduling order that limits the time: . . . (B) to file and hear motions; and (C) to complete discovery." The Rule further provides that the scheduling order may include "the date or dates for conferences before trial, a final pretrial conference, and trial," "any agreements the parties reach for asserting claims of privilege," and "any other matters appropriate in the circumstances of the case." T.R.C.P. 16.01(2).

5.  The Airport's request for a Rule 16 conference seeks the establishment of an early Case Litigation Plan that will advance disposition of the case and eliminate nonproductive processes and delays. The Case Litigation Plan should set forth the manner in which the parties will limit, expedite and complete discovery, the date or dates for motion deadlines, other conferences before trial, the final pretrial conference, and trial. The Airport anticipates that the Court will also set forth a timeline for the parties to assert any claims of privilege arising from third-party discovery and a timeline for filing any motions to compel or motions for protective order.

6.  In light of the foregoing, the Airport respectfully requests the Court conduct a Rule 16 conference as soon as permitted by the Court's schedule.

Respectfully submitted,

s/Paul S. Davidson
Paul S. Davidson (BPR#011789)
Michael C. Brett (BPR#037290)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile (615) 244-6804
Paul.Davidson@wallerlaw.com
Mike.Brett@wallerlaw.com

*Counsel for Plaintiff Metropolitan Nashville Airport Authority*

## NOTICE OF HEARING

**THIS MOTION IS EXPECTED TO BE HEARD ON FRIDAY, SEPTEMBER 25, 2020, AT 9:00 A.M. IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE. FAILURE TO FILE AND SERVE A TIMELY WRITTEN RESPONSE TO THE MOTION MAY RESULT IN THE MOTION BEING GRANTED WITHOUT FURTHER HEARING.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been delivered to the following via personal service:

Colonial Pipeline Company
c/o Corporation Service Company, Registered Agent
2908 Poston Ave
Nashville, TN 37203-1312 USA

With a courtesy copy to the following via email:

Wearen Hughes
Drew Goddard
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
whughes@bassberry.com
dgoddard@bassberry.com

This the 9th day of September, 2020.

s/Paul S. Davidson
Paul S. Davidson

4