IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| METROPOLITAN NASHVILLE<br>AIRPORT AUTHORITY,<br><br>    Plaintiff/Counter-Defendant,<br>v.<br><br>COLONIAL PIPELINE COMPANY,<br>    Defendant/Counter-Claimant. | Case No. 3:20-cv-00809<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

**RESPONSE IN OPPOSITION TO METROPOLITAN NASHVILLE AIRPORT AUTHORITY'S MOTION TO AMEND AND MOTION FOR A JURY TRIAL**

Metropolitan Nashville Airport Authority's ("MNAA") Motion to Amend and Motion for a Jury Trial (the "Motion") should be denied. MNAA's Motion is untimely and, if granted, would cause Defendant Colonial Pipeline Company ("Colonial") significant prejudice. Furthermore, MNAA has not met, nor has it even mentioned, its burden under Rule 16(b) to demonstrate the presence of "good cause" sufficient to justify filing an amended complaint more than six months after the deadline set in the case management order, as discovery is coming to a close and the parties complete the depositions of fact witnesses in this case. MNAA has no right to a jury trial both because this request is untimely and because MNAA's complaint seeks equitable relief.

### INTRODUCTION

MNAA wholly fails to establish the good cause required to amend its complaint after the deadline set forth in this Court's case management order, and its Motion should be denied on this basis alone. MNAA was or should have been aware of any basis for a damages claim when it filed its Complaint for Declaratory Judgment (the "original complaint"), well before the March 12, 2021 deadline to amend. In fact, MNAA specifically alleged the ***existence*** of damages in its original

1

complaint, but made the choice not to actually *seek* them. Now, over a year since filing its complaint, MNAA has decided, inexplicably, to seek additional relief based on the same information[1] as in its original complaint in the form of compensatory damages and punitive damages. MNAA further seeks to add a new theory for recovery of attorneys' fees—namely, that the breach alleged by MNAA, notably *without* seeking damages, was "intentional."

Advocating for prolonging this litigation—the inevitable outcome of allowing MNAA's proposed amended complaint—constitutes a 180-degree reversal for MNAA. MNAA fervently opposed Colonial's motion to consolidate this case with Case No. 3:20-cv-00666, which Colonial brought *before* this case was filed. In its Response in Opposition to Colonial's Motion to Consolidate, MNAA argued that this case must proceed quickly for the benefit of MNAA and claimed that consolidation would:

> bog[] down the straightforward and distinct question presented in the Relocation Case--whether Colonial is obligated to relocate its pipeline easement, as it agreed to do pursuant to the express language of the easement agreement--with the far more ***complex legal theories, factual proof, and expert proof*** presented in the Line Strike Case, including ***whether Colonial, the Airport, AECOM, TDOT, and/or other non-parties to the Relocation Case bear responsibility for the strike***, the ***apportionment of fault to those parties*** under common law, the Governmental Tort Liability Act and the Oil Pollution Act, and ***the calculation of the parties' respective costs and damages***.

(Case No. 3:20-cv-00666, Dkt. 39 at 2) (emphasis added). Despite previously refusing consolidation, MNAA now seeks resolution of many of these issues, but only insofar as they support MNAA's claims, by making sweeping proposed additions to its original complaint. To

---

[1] The "facts" cited throughout MNAA's brief are false and/or misleading, and, as Colonial shows below and will show more fully if the amendment is allowed, these allegations are contradicted by testimony and documentary evidence.

that end, the allegations in the enumerated counts at the end of MNAA's proposed amended complaint alone[2] would require determination of:

(1) who bears responsibility for the impacts of the line strike;[3]

(2) the existence or non-existence of proof regarding whether any breach by Colonial (which Colonial vigorously disputes based on the plain terms of the Easement) was "intentional and reckless";[4]

(3) whether, as an apparent alternative grounds for MNAA's breach of contract claim, Colonial engaged in "delay" that constituted an "intentional impediment of steps necessary for the relocation of its pipeline and easement" that somehow breached an unnamed (and non-existent) provision of the Easement;[5]

(4) whether negotiating with MNAA somehow breached an unnamed (and non-existent) provision of the Easement;[6]

(5) whether any of these alleged breaches are "material";[7]

(6) the existence or non-existence of a laundry list of **only *MNAA's damages***, which include, but **expressly *are not limited to*** "lost (expected) profits, lost revenues, higher construction costs due to delay, and other [unidentified] direct and indirect consequential damages";[8] and

---

[2] Outside of the allegations in the new counts, MNAA's proposed amended complaint also included 24 entirely new paragraphs and significant modifications of others, all of which will require additional factual discovery.

[3] *See* Dkt. 94-1 at ¶ 53 (adding language to declaratory judgment count that requires determination of whether "any dispute [the parties] may have related to the line strike that occurred on April 9, 2019" impacts the parties' rights and obligations under the Easement).

[4] *See id.*; ¶ 56 (adding claim that Colonial's "nonperformance under the Easement amounts to a knowing, intentional, reckless vexatious and material breach of contract").

[5] *See id.* ¶¶ 53, 56-57 (adding language to declaratory judgment count that requires determination of whether Colonial engaged in "intentional, reckless and vexatious delay" that somehow breached the Easement).

[6] *See id.* ¶ 56. It appears that MNAA's new charged and misleading claim that Colonial made some "effort to shake down the Airport for reimbursement dollars and contract concessions" in the proposed amended complaint is an attempt to plead that Colonial, by negotiating terms of the relocation, somehow breached the Easement.

[7] *See id.* ¶¶ 56-57.

[8] *See id.* ¶ 57.

3

(7) all of the allegations in new Count Three alleging a "breach of implied duty of good faith and fair dealing," which seems to be based on claims of delay, and would require factual and expert proof on whether the parties' actions were "commercially reasonable"; whether Colonial "intentionally and needlessly delay[ed] the relocation"; and whether damages are recoverable for this new count.[9]

Many of the factual issues MNAA now tries to belatedly interject into this case were bases for MNAA's consolidation objections and its insistence that this case move forward on an expedited schedule. MNAA offers no explanation for this complete reversal, much less establishes good cause, given that it was aware, long ago, of all the information it uses as a basis for these new allegations. Likewise, MNAA does not acknowledge, much less attempt to overcome, the immense prejudice its proposed amendments will cause Colonial—a critical element of a Rule 16(b) analysis.

Granting MNAA's Motion will impose significant prejudice on Colonial, who has litigated this case for over a year, dedicating substantial time and resources to preparing its defense and conducting discovery regarding MNAA's claims in its original complaint. It would be materially unjust to permit MNAA—just as discovery is closing, when depositions are substantially completed and the time to issue new written discovery requests has passed—to introduce new theories of liability and forms of relief. *See* Dkt. 83 at 1.

Permitting these amendments would be particularly unjust where, as here, MNAA has pushed a punishing schedule of several months of almost constant depositions at its insistence that the case must hurtle towards trial.[10] As shown in the parties' Joint Statement Regarding Case

---

[9] *See id*. ¶¶ 58-62. It appears that this claim is futile, because there is no "time is of the essence" clause in the Easement, but, if it were not deemed futile and were allowed to proceed, this claim would require significant additional discovery.

[10] In its Motion, MNAA claims that "the Court has issued a partial stay of discovery," but the Court's earlier partial stay of discovery was lifted by resolution of Colonial's Motion for Disqualification. (*See* Dkts. 66, 72).

4

Schedules (Dkt. 79), in advance of the parties' status conference that was held on August 16, 2021, the parties were attempting to schedule the depositions in this case (which, when counting depositions scheduled and depositions taken, number close to thirty as of the date of this filing) with a fact witness deadline of September 7, 2021. MNAA refused to agree to the two-month extension proposed by Colonial even though, to adhere to that schedule, the parties would need to have immediately scheduled and taken approximately two depositions *every single business day*. *See* Dkt. 79 at 2-7. In other words, MNAA refused to move the schedule even though adhering to it would be impossible.

On August 23, 2021, the parties filed a proposed calendar for deposition dates that they had agreed to in accordance with the Court's Order (Dkt. 80), and the parties have largely stuck to that schedule. Now, having forced this schedule with claims of some exigency for relocation of the lines, MNAA advances new claims and seeks new relief that would require re-deposing many of these witnesses, issuing new written discovery and further document searches and productions. Indeed, the 30(b)(6) depositions in this case are currently scheduled to take place around the time that briefing on Plaintiff's Motion will be completed, but they would need to be re-opened if the Motion is granted.

This may be why instead of addressing the good cause standard outlined in Rule 16(b), MNAA's Motion ignores it entirely and mischaracterizes the record as "new", while omitting critical context regarding some of the "new" information it claims to have discovered over the course of discovery. The record directly contradicts MNAA's belated allegations, and the law does not support the new theories of liability it now seeks to introduce. Permitting MNAA to amend its complaint, therefore, would be improper for the additional reason that the proposed amendments are futile.

## RELEVANT BACKGROUND

MNAA's original complaint seeks a declaration that Colonial is responsible, under a 1976 Dedication of Easement and Agreement between MNAA and Colonial (the "Easement"), for relocating its pipelines at MNAA's request, but at Colonial's sole expense. *See* Dkt. 1-1 at 12-14. It further seeks a judgment setting a schedule for the relocation. *Id*. Crucially, while MNAA alleged a breach of contract and the existence of damages, it did not include a ***claim*** for breach of contract or seek damages, punitive or otherwise. *Id.* This deliberate choice was reinforced by MNAA's initial disclosures—served months ago, and notably, prior to any discovery—which explicitly state a computation of each category of damages is "not applicable at this time" because MNAA was seeking a declaratory judgment, but add that "***[t]he Airport reserves the right to amend its complaint to seek damages*** if Colonial's continuing refusal to relocate its pipeline results in monetary damages." *See* J. Zeigler Decl., Ex. A at 2 (MNAA Initial Disclosures) (emphasis added).[11]

The relocation was requested by MNAA to accommodate projects by MNAA and the Tennessee Department of Transportation ("TDOT") involving improvements to terminal access roadways at the Nashville International Airport and realignment of Donelson Pike near the airport. Colonial received formal, written notice of the need to relocate its pipelines in accordance with the Easement in March of 2020, although it had been involved in prior discussions regarding the location, timing, and cost of a potential relocation with TDOT and MNAA. *See* Dkt. 1-1 at 44. Indeed, Colonial's discussions and negotiations about the relocation during this time, which are

---

[11] Although in its Supplemental Disclosures, which were submitted after the motion to amend deadline passed, MNAA said it "seeks recovery of monetary damages," *see* J. Zeigler Decl., Ex. B at 2 (MNAA Supplemental Disclosures), MNAA only now seeks to amend its complaint some nine months later.

6

MNAA's bases for seeking to amend the original complaint, were prominently featured in MNAA's original complaint, including in paragraphs 18-20 that discusses Colonial's position that "TDOT was responsible to pay 100% of the pipeline relocation costs." *Id.* at 9-10.

This lawsuit was filed a few months later after the March 2020 notice, in the midst of a global pandemic after one of Colonial's pipelines was recklessly struck and punctured (both of which complicated Colonial's efforts to plan the pipelines' relocation) and after Colonial had filed a lawsuit seeking remedies from the line strike. *See* J. Zeigler Decl., Ex. C at 1 (CPC0008538, email correspondence from M. Herman, dated March 30, 2020); *see id.* at Ex. D, 2-4 (Colonial's Responses to MNAA's First Set of Interrogatories and Requests for Production, Case No. 3:20-cv-00666). The line strike contaminated the surrounding soils and groundwater, and led Colonial to "have to reconfigure its relocation plans." *See* Dkt. 1-1, Ex. 7 at 2. The line strike further complicated Colonial's efforts to coordinate with TDOT and MNAA, and will likely further affect pipeline relocation efforts, including as to location, cost, and/or timing. *See, e.g.*, *id.*, Ex. 5 at 1.

In short, a number of elements outside of Colonial's control hindered the relocation process. In any event, the timing of the process is of no consequence under the Easement, because the parties did not include a "time is of the essence" provision in that agreement. Nonetheless, MNAA has now tried to read a "time is of the essence" clause **into** the Easement to support its belated request for damages. *See* Dkt. 1-1 at 44*;* J. Zeigler Decl., Ex. C at 1 (CPC0008538, email correspondence from M. Herman, dated March 30, 2020); *see id*. at Ex. E (KLF062111, the Easement). But the Easement does *not* impose any sort of timing requirement on Colonial, nor does it require Colonial to relocate its gasoline pipelines to any specific location. *See id.* at Ex. E (KLF062111, the Easement). Further, there is no language in the Easement barring Colonial and MNAA from negotiating the specifics of a pipeline relocation project in exchange for

7

reimbursement, which would not be unexpected given the circumstances here. *See* J. Zeigler Decl., Ex. E (KLF062111, the Easement); *id.* at Ex. F (Deposition of A. Smith at 120:14-121:5); *id.* at Ex. G (Deposition of D. Jacobsen at 105:14-17) ("There's—for whatever reason, it's not unusual for us to have discussion with the Airport or TDOT and come up with a reimbursement agreement."); *id.* at Ex. G (Deposition of D. Jacobsen at 172:11-15 ("[I]t is not unusual for entities such as the Airport to share in the cost burden of major expansion projects.")). Yet, MNAA's Motion is based entirely on a theory that ignores these realities.

MNAA's Motion seeks to cast Colonial's regular business activities as part of a nefarious plot to "extort" reimbursement from MNAA. None of the new allegations in the proposed amended complaint or outlined in MNAA's Motion change the fact that this Motion is untimely and should be denied on that basis alone, and MNAA's hyperbolic posturing does not change that reality. No good cause exists for such an untimely amendment, the best evidence of which is MNAA's complete failure to even address, much less satisfy, the applicable standard.

## LEGAL ARGUMENT

### I. MNAA Fails to Establish Good Cause to Justify An Eleventh Hour Amendment to the Complaint.

MNAA's Motion completely ignores the procedural posture of this case by failing to apply the correct legal standard. Typically, the Rule 15(a) analysis applies to motions to amend, but where, as here, "a motion to amend is filed after the deadline set forth in the Court's scheduling order, the standards of Rule 15(a) *and* Rule 16(b) apply." *Jefferson v. Lee*, No. 3:20-cv-00469, 2021 WL 3725977, at *2 (M.D. Tenn. Aug. 23, 2021) (citing *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)) (emphasis added). MNAA's Motion does not even attempt to address the Rule 16(b) standard, despite the fact that this analysis is a ***threshold requirement*** that must be

8

satisfied *prior* to determining if the amendment satisfies Rule 15(a). *See Wachter, Inc. v. Pitts*, No. 3:18-CV-00488, 2020 WL 606597, at *2 (M.D. Tenn. Feb. 7, 2020) (citations omitted).

Under Rule 16(b), the deadline for amendment of pleadings set forth in the Court's scheduling order can be extended "only for good cause and with the judge's consent." *Id.* (citing Fed. R. Civ. P. 16(b)(4)); *see also Seifu v. Postmaster Gen., U.S. Postal Serv.*, No. 1:19-CV-572, 2021 WL 4749322, at *2 (S.D. Ohio Oct. 12, 2021) ("[T]his Court would not permit the amendment because Plaintiff offers no just cause for the untimely amendment and such amendment would be overly prejudicial to the Defendant. Therefore, the procedurally improper 'Amended Complaint' will be stricken from the record."). The "'good cause' requirement is 'a threshold that requires late-moving litigants to show that despite their diligence they could not meet the original deadline.'" *Wachter, Inc.*, 2020 WL 606597, at *2 (quoting *Shane v. Bunzl Dist. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008)). "Potential prejudice to the nonmovant" is also a factor the court should consider in deciding whether to amend a scheduling order, "even in the absence of prejudice the plaintiff must explain its failure to assert the amendment in a timely fashion." *Id.* (citing *Stewart v. King*, No. 3:09-cv-21, 2011 WL 237678, at *5 (M.D. Tenn. Jan. 24, 2011)).

There is no good cause to justify MNAA's undue delay in bringing its proposed amendment. MNAA fails to establish that, despite its diligence, it *could not have met* the March 12, 2021 deadline, which is basis enough to deny its Motion. Furthermore, permitting MNAA to amend its pleadings at this late juncture in the litigation—well over a year after it was filed, and near the conclusion of fact discovery that MNAA insisted proceed on an expedited schedule—will derail the schedule of this litigation, substantially increase costs, and greatly prejudice Colonial. MNAA's Motion should therefore be denied.

### a. MNAA Fails to Offer Any Justification For Missing the March 12, 2021 Deadline By Over Six Months

Pursuant to Rule 16(b), the burden is on MNAA to "explain why [it] failed to move for the amendment at a time that would not have required a modification of the scheduling order." *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (citing *Leary,* 349 F.3d at 906–08). But MNAA does not even mention Rule 16(b) in its Motion, let alone demonstrate it meets this standard. *Adams v. Nature's Expressions Landscaping Inc.*, No. 5:16-CV-00098-JMH, 2018 WL 2452179, at *2 (E.D. Ky. May 31, 2018) (citing *Leary,* 349 F.3d at 907) ("Good cause does not exist where a plaintiff fails to explain or provides no excuse for his delay").

Instead, MNAA claims its Motion is "timely," despite the fact it was filed more than ***six months*** after the deadline to file an amended complaint. MNAA claims Colonial "knew" that MNAA was "seeking damages . . . . since at least April 9, 2021," a date to which MNAA attributes no particular significance but presumably is invoked because it is the date of its Supplemental Disclosures. MNAA's argument is counter to the applicable legal standard (particularly since MNAA alleged the existence of damages, but did not seek damages, in the original complaint). *See* Dkt. 95 at 2; *see also* J. Zeigler Decl., Ex. A at 2 (MNAA Initial Disclosures) (reserving the right to amend the complaint "to seek damages if Colonial's continuing refusal to relocate its pipeline results in monetary damages."). This claim is even more troubling because it reflects that ***MNAA knew*** of its claimed basis for damages at the latest on April 9, 2021, and yet it waited another six months prior to seeking permission to amend its complaint. *See Desai v. Geico Cas. Co.*, No. 1:19-CV-2327, 2021 WL 671567, at *2 (N.D. Ohio Feb. 22, 2021) ("Plaintiff admits he knew about it in September 2019 . . . yet failed to seek leave to amend for nearly a year. This does not demonstrate the diligence good cause requires.").

MNAA then attempts to excuse its delinquency by arguing it was unaware evidence to support a damages claim existed, because the evidence "supporting an award of punitive damages and attorneys' fees is entirely within Colonial's control." Dkt. 95 at 2. This representation is false. MNAA was fully aware Colonial was engaged in negotiations regarding potential reimbursement for the relocation (negotiations MNAA now characterizes as an "intentional breach") because MNAA was involved in or aware of such negotiations as they were happening.[12] *See* Dkt. 1-1 at Ex. 7 (Colonial "remain[s] committed to working cooperatively to finalize the scope, timing, and payment of the relocation projects. We look forward to making further progress with MNAA and TDOT on these topics."); *see also* Dkt. 1-1 at Ex. 5 (letter from TDOT to Colonial regarding reimbursement). Indeed, in the original complaint, MNAA alleged that Colonial "demand[ed] that TDOT pay 100% of the costs to relocate the Pipeline." (Dkt. 1-1 ¶ 19).

It is also telling that, of the **ten** exhibits attached to the proposed amended complaint, all but **one** of them were available to MNAA prior to the filing of the original complaint, and indeed, were attached as exhibits to the original complaint. The sole "new" exhibit to the proposed amended complaint is a letter to TDOT from Colonial, but even it was produced to MNAA on July

---

[12] MNAA inappropriately cites to portions of privileged testimony from Mr. Jim Avioli in its memorandum of law and proposed amended complaint, including testimony regarding the operations of Colonial's in-house legal department during the negotiation process. *See* Dkt. 95 at 7; Dkt. 94-1 ¶¶ 26, 29. Colonial informed MNAA that it would be clawing back this privilege testimony back pursuant to the appropriate mechanism outlined in the parties' protective order in this case. *See* J. Zeigler Decl., Ex. K (Letter from S. Miller to P. Davidson, dated October 21, 2021); Dkt. 39 ¶ 14. In addition, MNAA improperly cited Mr. Avioli's deposition testimony prior to the period for confidentiality designations, and before Colonial even received the final transcript. *See* Dkt. 39 ¶ 11. Opposing counsel did not confer with Colonial's counsel prior to including this material in MNAA's filings. *See* J. Zeigler Decl., Ex. K (Letter from S. Miller to P. Davidson, dated October 21, 2021). Despite this, MNAA has informed Colonial that it believes the testimony at issue is not privileged and otherwise cannot be clawed back pursuant to the Court's agreed confidentiality and protective order. *See* J. Zeigler Decl., Ex. L (Letter from P. Davidson to S. Miller, dated October 25, 2021). The parties expect to present this issue to the Magistrate Judge.

11

23, 2021, months prior to the filing of the Motion. *See* J. Zeigler Decl., Ex. J (Email Correspondence from B. Dobbs to P. Davidson, dated July 23, 2021, producing TDOT0001806, and TDOT0001806, Letter from D. Pozin to I. Eghbali, dated April 8, 2021). Furthermore, as MNAA concedes, this exhibit does not introduce new information, as it listed the same obstacles for the relocation project that "had raised in the past." *See* Dkt. 95 at 13. Likewise, of the ***seventeen*** exhibits attached to MNAA's Motion, only ***two*** of them were produced in the last month, and neither of those is attached to the proposed amended complaint.[13] *See* J. Zeigler Decl. at 2-3.

Courts regularly deny motions to amend under Rule 16(b) where a party makes a last-minute attempt to raise several major issues in the face of a "looming discovery deadline" and quickly approaching trial date. *See Kenco Logistics Servs., LLC v. Kids II, Inc.*, No. 3:19-CV-01129, 2021 WL 3363420, at *2 (M.D. Tenn. Aug. 3, 2021) ("The court finds that Kids2 has not adequately shown good cause for the delay in bringing this Motion, in light of the looming discovery deadline and a trial date less than six months away"). This Court should do the same here. It is well-past the March 12, 2021 deadline, and MNAA wholly failed to present any evidence to justify its delay in filing this Motion. MNAA had access to the documents it cites in its proposed amended complaint for months and only seeks to introduce a single new document to

---

[13] MNAA attempts to make much of the productions Colonial undertook over the course of depositions. These productions were appropriately made as supplements, for example, in response to discrete issues identified by the parties during depositions, which is a common occurrence in complex litigation. *See generally Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 243 (3d Cir. 2007) (noting "scheduling orders often require document production to be completed before depositions commence, at which time witnesses often identify relevant documents not previously produced."). The productions on October 6 and October 15 were in direct response to MNAA's request that Colonial revisit its entire privilege log, which required a secondary review of over 4,000 documents, and Colonial's desire to supplement its production in response to MNAA's document requests. J. Zeigler Decl. at 1-2. Nonetheless, these productions are irrelevant to the instant motion, as none of these documents are exhibits to MNAA's proposed amended complaint. J. Zeigler Decl. at 2.

support its proposed amended complaint. This information is not "new," and provides no basis for permitting an untimely amendment, particularly one that attempts to raise several major issues less than a month before the close of fact discovery. *See Kenco Logistics Servs., LLC*, 2021 WL 3363420, at *2. Even if the deposition testimony "confirmed" certain theories of liability for MNAA, which it does not, that also is insufficient to meet the good cause standard. *See id.* (deposition testimony confirming a new cause of action is insufficient to establish good cause); *see also Haley v. Kundu*, No. 1:11-CV-265, 2013 WL 1759552, at *3 (E.D. Tenn. Apr. 24, 2013) (a party's "attempt to pursue a different plan of action now does not provide the Court with a legitimate reason to extend the deadlines in this case.").

### b. Permitting an Amendment at this Late Hour Will Prejudice Colonial.

Permitting MNAA to amend its complaint now will also impose significant prejudice on Colonial, and thus its Motion should be denied. *See Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 449 (6th Cir. 2010) (citing *Leary*, 349 F.3d at 906, 908) (Under Rule 16(b), a district court "must consider whether the amendment will prejudice the party opposing it"). Over the course of the past year, the parties have engaged in extensive discovery, including nearly thirty depositions and the production of thousands of documents. *See* J. Zeigler Decl. at 1-3. This feat has required adherence to a punishing deposition schedule, at MNAA's insistence that this case move forward at a breakneck speed. *See, e.g.*, Dkt. 7 at 3 ("The Airport respectfully submits that good cause exists . . . . to set an expedited schedule and early trial date."); Dkt. 79 at 5-7 (MNAA "believes the Court's intervention is necessary to expedite the disposition of the Relocation case"); Dkts. 81 & 81-1 (scheduling twenty-eight depositions over the course of eleven weeks). Fact discovery for this case concludes on November 12, 2021, just over two weeks from the filing of

13

this opposition brief. Dkt. 83 at 1. The time to issue new written discovery requests passed on October 12, 2021, prior to MNAA filing its Motion. *See id.*

If the scope of this litigation is now expanded to encompass new questions of fact—including whether negotiating the terms of relocation was a breach of the Easement and if that alleged breach was ***willful*** and in ***bad faith***—it will force the parties to engage in "additional written discovery and new depositions of individuals already deposed," and "further delay in this litigation would be nearly inevitable." *Kenco Logistics Servs., LLC*, 2021 WL 3363420, at *3 (denying a motion to amend a breach of contract claim to add a fraud claim); *see Desai*, 2021 WL 671567, at *3 (denying a Rule 16(b) motion "when the deadline for fact discovery relating to class certification is at hand," because, "[i]n addition to the relatively slight burden of amending its answer and the potentially greater inconvenience of an additional round of briefing on a motion directed to the proposed amended complaint, the amendment may well require new or additional discovery"). MNAA's Motion must therefore be denied, as "[t]he sudden shift of direction and focus of this case promised" by the pleadings would "most likely result in the claims against" Colonial "languishing for an extended period of time," and prejudicing Colonial, who is "entitled to an opportunity to defend these claims in a timely manner." *Stewart*, 2011 WL 237678, at *7.

## II. There is No Substantive Basis for the Amended Allegations, And Thus Any Amendment Would be Futile.

Only if MNAA can satisfy Rule 16(b), which, for the reasons explained above, it cannot, should the Court consider whether MNAA's amendment meets Rule 15(a)'s standard. Rule 15(a) provides another independent bar that "a court need not give leave to amend when doing so would be futile." *Chkrs, LLC v. City of Dublin, Ohio*, No. 2:18-CV-1366, 2019 WL 3975447, at *3 (S.D. Ohio Aug. 22, 2019) (internal citation omitted); *see Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th

14

Cir. 2005) (citation omitted) ("Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss.").

MNAA's allegations regarding its punitive damages claim are meritless, and thus the proposed amendments to the original complaint are futile. As an initial matter, obtaining punitive damages under Tennessee law for a breach of contract claim is very difficult. *See*, *e.g.*, *Stone v. Martin Transport, LLC*, No. 3:12–cv–0396, 2014 WL 1668250, at *1 (M.D. Tenn., April 25, 2014) (rejecting a claim for punitive damages in the absence of evidence of "any 'truly reprehensible' or 'egregious' conduct" by the defendant); *Williams v. JE&T, Inc.*, 1991 WL 149732, at *2 (Tenn. Ct. App. Aug. 9, 1991) ("A breach of contract is wi[l]lful and deliberate. . . only when the agent, in complete disregard of his contractual obligations, fails to perform or misperforms the promised services and has no substantial moral excuse for doing so, or is guilty of disloyal or grossly insubordinate conduct."). In any event, MNAA's version of events does not state a claim for intentional breach of contract or a sufficient basis for punitive damages, and thus any amendment to add this claim at this late hour would be futile.

Moreover, MNAA cites no provision in the parties' Easement imposing a deadline to relocate the pipeline or a schedule to do so, nor does the Easement contain a time is of the essence clause. Such timing obligations simply do not exist in the Easement—nor is there any requirement that Colonial adopt a certain location for the relocation. *See* J. Zeigler Decl., Ex. E (KLF062111, the Easement). Therefore, MNAA's proposed amendments, which allege error in Colonial's failure to relocate ***quickly*** and in its attempt to negotiate some level of reimbursement for the relocation, fail to properly plead any cause of action for breach of contract, willful or otherwise. *See* Dkt. 94-1 ¶¶ 24, 35-36, 41, & 45-48; *see* 22 Steven W. Feldman, Tennessee Practice Series Contract Law and Practice § 11:24, Westlaw (database updated Sep. 2021) ("In both law and

equity cases, time ordinarily is not regarded as being of the essence, absent either an express contract stipulation, a manifestation of intent from the contract or the subject matter, or as an implication from the contract or the circumstances."); *see also Clark v. Givens*, No. M2019-01693-COA-R3-CV, 2020 WL 4382247, at *4 (Ct. App. Tn. July 30, 2020) (internal citations omitted) ("In determining the existence of a 'time is of the essence' provision, the court should look at the entire agreement . . . Tennessee courts have consistently held that, generally, time is not of the essence in construction contracts.").

MNAA's new allegations are also misleading, or, in some cases, simply incorrect, and the recent depositions MNAA purports to rely upon establish they are incorrect and any amendment would be futile. *Bell v. Tennessee*, No. 1:11-CV-14, 2012 WL 996560, at *6 (E.D. Tenn. Mar. 22, 2012) ("[S]ignificant inconsistencies" between the allegations and evidence in the record "further underscore the futility of allowing any amendment"). For example, Colonial was ***not*** notified "that its pipelines interfered with the TARI project and would have to be moved" in 2018, as MNAA now alleges. *See* Dkt. 94-1 ¶ 11. To the contrary, as the original complaint alleges (Dkt. 1-1 ¶ 21) as Aaron Smith's testimony establishes, and as demonstrated by MNAA's formal notice (as required by the Easement), Colonial was officially made aware that it needed to relocate its pipelines in March of 2020. *See* J. Zeigler Decl., Ex. F (Deposition of A. Smith at 60:13-15 ("I would not characterize [the 2018 discussion] as a notice but rather as a heads-up of a potential project down the road.")); *see id.* at Ex. C (CPC0008538, email correspondence from M. Herman, dated March 30, 2020). This lawsuit was filed September 4, 2020, just six months later. *See* Dkt. 1-1.

MNAA's proposed amended complaint also alleges Colonial "stopped all work" on the relocation project after January 23, 2020, when TDOT rejected Colonial's A-Date submission.

16

*See* Dkt. 94-1 ¶ 35-36. But the evidence reflects this is not so—the testimony instead reflects that, throughout 2020, Colonial continued to work on the budget and design for the relocation project. *See* J. Zeigler Decl., Ex. H (CPC0255539, D. Pozin's Handwritten Notes); *id.* at. Ex. I (Deposition of D. Pozin at 201:1-206:4 (describing work performed in 2020)). MNAA also alleges, without any basis, "both Colonial and Kleinfelder had determined" the so-called "Long Route" was the "option to advance to next stage of review and engineering design." Dkt. 90 at 5. The actual testimony establishes that this is not so. To the contrary, this was merely an opinion of the Relocation Manager, Dan Jacobsen, who testified he did not have the authority to make this decision on behalf of Colonial. *See* J. Zeigler Decl., Ex. G (Deposition of D. Jacobsen at 272:18-275:7); *see id.* at Ex. I (Deposition of D. Pozin at 102:23-25 (Jacobsen "was not the deciding factor, nor was he the authority at Colonial to be able to make that decision")). Thus, the record contradicts MNAA's "new" allegations, and even if it did not, the allegations fail to establish any breach of the Easement occurred, willful or otherwise.

**III.     MNAA Seeks Equitable Relief, and Thus It has No Right to Request a Jury Trial.**

MNAA's request for a jury trial should also be denied because it seeks only to resolve equitable rights in its original complaint, and it should not be permitted to file an amended complaint. "[T]o determine whether the Seventh Amendment entitles a particular litigant to a jury trial in a particular case, we must determine whether that case will resolve legal rights, or only equitable rights." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 659 (6th Cir. 1996). There are two factors at play in this analysis: (1) if, historically, the claim would be considered a legal or equitable claim, and (2) the nature of the relief sought. *See id.* Of the two inquiries, however, "[t]he second inquiry is more important." *Id.*

While MNAA's complaint includes a breach of contract claim, which is traditionally considered a legal claim, MNAA is currently ***not*** seeking damages but instead specific performance in the form of "a judgment setting a definitive schedule for Colonial to relocate" its pipelines, as well as a declaration of Colonial's obligations under the Easement. *See* Dkt. 1-1 at 14. Accordingly, MNAA is not entitled to request a jury trial, because, "[w]hile a claim of breach of contract can be historically legal, if the relief sought is equitable then there is no right to a trial by jury." *Talent Tree Crystal, Inc. v. DRG, Inc.*, No. 1:04-CV-875, 2005 WL 8169098, at *2 (W.D. Mich. Aug. 11, 2005). A request for specific performance is a form of equitable relief, and thus MNAA has no right to request a jury trial. *See id.* ("An action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court.") (quoting *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989)); *see also Golden*, 73 F.3d at 660 (classifying specific performance as an equitable remedy). Likewise, "[s]eeking declaratory relief does not entitle one to a jury trial where the right to a jury trial does not otherwise exist." *Golden*, 73 F.3d at 662. MNAA admitted this point in its initial disclosures, where it explicitly stated that it was seeking "specific enforcement of [Colonial's] obligation to relocate its pipelines, and thus "[a]ny award of damages" in this case "will be equitable in nature." *See* J. Zeigler Decl., Ex A. at 2 (MNAA Initial Disclosures).[14] Because there is no independent basis for obtaining a jury trial in this instance, MNAA's request for declaratory relief does not entitle it to a jury trial. *See id.*

---

[14] At the same time, MNAA noted in its Initial Disclosures that it would amend its complaint "to seek damages if Colonial's continuing refusal to relocate its pipeline results in monetary damages." *See* J. Zeigler Decl., Ex. A at 2 (MNAA Initial Disclosures). As explained above, MNAA failed to do this within the scheduling order's deadline, and it should not be permitted to do so now.

Furthermore, Rule 38(b) of the Federal Rules of Civil Procedure requires that a jury demand must be made "no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b). A party waives a jury trial unless its demand is properly served and filed. *Id.* MNAA is requesting a jury more than a year after the filing of its complaint. For this additional reason, MNAA's request for a jury trial should be denied.

## CONCLUSION

There is no sound basis for permitting MNAA to amend its pleadings to add a claim for both compensatory and punitive damages at this juncture in the proceedings, particularly given that the addition of punitive damages claim will necessarily alter the focus of this litigation. Fact discovery in this case closes in just over two weeks, and the parties have substantially completed the depositions of the witnesses in this matter. It would be unjust to permit MNAA to switch its litigation tactics at this point, and thus its Motion must be denied.

Respectfully submitted,

/s/ *Jessalyn H. Zeigler*
Jessalyn H. Zeigler (BPR No. 16139)
Robert E. Cooper, Jr. (BPR No. 10934)
L. Wearen Hughes (BPR No. 5683)
Brian M. Dobbs (BPR No. 25855)
Bass, Berry & Sims PLC
150 3rd Ave. S., Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Facsimile: (615) 742-6293
jzeigler@bassberry.com
bob.cooper@bassberry.com
whughes@bassberry.com
bdobbs@bassberry.com

*Attorneys for Colonial Pipeline Company*

# CERTIFICATE OF SERVICE

I certify that I filed this document electronically on October 27, 2021 using the Court's electronic case management system, which will send notice to:

Paul S. Davidson
Edward Callaway
Danielle Johns
Michael C. Brett
Waller Lansden Dortch & Davis LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
paul.davidson@wallerlaw.com
ed.callaway@wallerlaw.com
danielle.johns@wallerlaw.com
mike.brett@wallerlaw.com

*Attorneys for Metropolitan Nashville Airport Authority*

Gary C. Shockley
Caldwell G. Collins
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
211 Commerce Street
Nashville, TN 37201
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Attorneys for Metropolitan Nashville Airport Authority*

Gary C. Shockley
Caldwell G. Collins
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
211 Commerce Street
Nashville, TN 37201
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Attorneys for AECOM Technical Services, Inc.*

    /s/ *Jessalyn H. Zeigler*